## UNITED STATES *v.* LYON & HEALY (No. 1102).[1]

1. VIOLIN AND CELLO NECKS OF WOOD.

The physical construction of these violin and cello necks is such as to render them plainly unserviceable for any other purpose than for use as parts of musical instruments.—Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528); Richard & Co. *v.* United States (3 Ct. Cust. Appls., 306; T. D. 32587); United States *v.* Lyon & Healy (4 Ct. Cust. Appls., 84; T. D. 33366).

2. HOLLOW CYLINDRICAL PIECES OF WOOD AND IVORY.

The appearance of these hollow cylindical pieces of wood and ivory does not indicate they are confined in their possible uses, nor does the evidence justify the conclusion that they are intended for use as parts of musical instruments.

United States Court of Customs Appeals, November 11, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30931 (T. D. 33055).

[Modified.]

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, special attorney, on the brief), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The decision of the Board of General Appraisers, the subject of this appeal, embraced five classes of articles. As described by the board they consist of (1) blocks of wood made into the form of violin necks; (2) tail pieces for violins; (3) pegs for violins; (4) round pieces of granadilla wood about 7 inches in length, having a hole bored lengthwise through the center, intended to be made into mouthpieces for flutes; and (5) round pieces of ivory in different lengths, having a hole bored lengthwise through the center, intended to be made into mouthpieces for piccolos and flutes. It may be added that the round pieces of ivory were of different diameters as well as lengths. The appeal was from the decision of the collector of customs at the port of Chicago. No evidence was introduced at the hearing before the Board of General Appraisers and the matter

---

[1] Reported in T. D. 33873 (25 Treas. Dec., 431).

came up for decision upon the reports of the appraiser at the port of Chicago, the returns of the collector at that port, and the samples introduced. The board held that items 2 and 3, *supra*, of the articles were dutiable as parts of musical instruments under the provisions of paragraph 467 of the tariff act of 1909 and the remaining three as manufactures. The Government appeals as to the three latter items only. The appeal, in the language of the Government's petition in this court, covers the " violin and cello necks, ivory mouthpieces for flutes and piccolos, and granadilla wood mouthpieces for flutes." The reports of the appraiser at the port of Chicago state of the merchandise in the different returns to different protests included in this appeal as follows:

The merchandise in question is violin and cello necks of wood and finished ready to be fitted upon the instruments.

The merchandise in question consists of violin necks of wood, only requiring a little sandpapering to fit them for violins.

The merchandise in question consists of ivory mouthpieces for piccolos, not finished.

The merchandise in question is granadilla wood mouthpieces for flutes, not finished.

The merchandise in question consists of mouthpieces for piccolos and flutes, made of ivory, and are cut into lengths and have holes through them, but are not a complete article.

As we view the case, there is no material difference in the descriptive facts affecting the importations covered by the several protests covered by this appeal in the language quoted.

The violin and cello necks are cut into shape, but are not polished or fitted, nor have they holes bored through them for the keys for the violin strings. They are, however, so far shaped as to indicate *per se*, as imported, their ultimate use, and that by reason of their shape and condition as imported they are unfit for any other use.

The so-called mouthpieces for flutes and piccolos are cylindrical forms of wood or ivory with holes lengthwise through the centers. In the condition as imported they might be used for many purposes, but there is absolutely nothing about their condition as imported which indicates their intended use or which would render them solely usable for any particular purpose.

All of the articles were claimed by the protestant to be properly dutiable as manufactures of wood or ivory, according to the material of the particular article.

The determination of the issue here presented is had by the construction to be put upon the term " parts of musical instruments " as used in paragraph 467, which reads:

467. Musical instruments or parts thereof, pianoforte actions and parts thereof, strings for musical instruments, not otherwise enumerated in this section, cases for musical instruments, pitch pipes, tuning forks, tuning hammers, and metronomes; strings for musical instruments, composed wholly or in part of steel or other metal, all the foregoing, forty-five per centum ad valorem.

The descriptive provision is identical with the one *in pari materia*, paragraph 453, of the tariff act of 1897.

Some contention is made in the record that the classification by the Board of General Appraisers is justifiable upon the ground of legislative interpretation. We are unable to discover, however, from an examination of the authorities that there has been any uniformity of customs interpretation of such, though reenacted *in hæc verba*, as would warrant the court in adopting the same as constructive of the paragraph or phrase in question.

The legislative and judicial history of the paragraph is instructive, and we repeat the same, as announced by the Supreme Court of the United States in Robertson *v.* Gerdan (132 U. S., 454, 458, 459), as follows:

It is thus seen by the act of 1846, by the act of 1861, and by the act of 1862 provision was made for imposing a duty on parts of stringed musical instruments by laying a duty on "strings for musical instruments of whip gut or catgut," leaving other parts of musical instruments, imported in parts, to be dutiable under other provisions of law. So, in the Revised Statutes of 1874, and as enacted in 1883, while there is no specific duty on parts of musical instruments as such parts, "catgut strings or gut cord for musical instruments" are made free of duty, leaving other parts of musical instruments to be dutiable under other provisions than that applicable to "musical instruments of all kinds."

This view of the legislation of Congress is fortified by the fact that in the Revised Statutes of 1894, and in the same as enacted in 1883, a duty is imposed on carriages and parts of carriages, on chronometers and parts of chronometers, on clocks and parts of clocks, and on watches and on parts of watches. If Congress had intended in either enactment of the Revised Statutes to impose the same duty on parts of musical instruments which it imposed on musical instruments, it would have been easy to impose that duty on "musical instruments of all kinds and parts of the same."

That case is illustrative in more than one particular. The merchandise there in question is described as—

Pieces of ivory for the keys of pianos and organs, matched to certain octaves, sold to manufacturers, who scrape them to make them adhere to wood and then glue them to wood.

It is claimed that under the then existing law these articles were dutiable as "musical instruments," there being no provision in the law for *parts* of musical instruments. The Supreme Court held that they were not dutiable as such, but concluded that the phrase above quoted, in view of the subsequent action of Congress, was very significant. The court stated:

If Congress had intended in either enactment of the Revised Statutes to impose the same duty on parts of musical instruments which it imposed on musical instruments, it would have been easy to impose that duty on musical instruments of all kinds and parts of the same.

Almost immediately after this declaration of the court and in the tariff act of 1894 we find substituted for the language "musical instruments of all kinds" in the act of 1883, the subject of the consideration by the Supreme Court in this case, the words in the tariff act of 1894, "musical instruments or parts thereof," and the continuance of that language in the acts of 1897 and 1909.

This status of legislation and decision is almost, if not quite, conclusive that these words were included within the tariff enactments of 1894 and subsequent thereto to meet the decision of the Supreme Court of the United States, for they are in language almost identical with that suggested by the court as sufficient to include the piano keys described above. Moreover, it is equally significant in the phrase quoted that the the Supreme Court regarded those articles as parts of musical instruments.

The phrase "parts of musical instruments," as applied to merchandise of more or less definite construction, makes it dutiable according to use. If the merchandise is to be used in the make-up of musical instruments, becoming a part thereof, they are dutiable under this provision; otherwise not. The test of whether or not in the condition imported they are to be classified as such for dutiable purposes has been clearly defined by this court and the Supreme Court in adjudicating language almost precisely the same as that before this court. We said:

> In order to bring any material for manufacturing within a tariff designation which covers one of its ultimate uses it should be so far advanced by the processes applied thereto in the line of that particular ultimate use that, either from an examination *per se* evidences of its ultimate use are made clear or so far advanced that its utility in any of its other possible uses shall have been destroyed. Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494, 495; T. D. 31528).

That is the doctrine of the Supreme Court in Worthington *v.* Robbins (139 U. S., 337, 341). The question there was what constituted watch materials. The Supreme Court said in part:

> In order to be dutiable as "watch materials" the article, when imported, must be in such form of manufacture as to show its adaptation to the making of watches. * * * In order to be "watch materials" the article must in itself bear marks of its special adaptation for use in making watches.

More in point is Magone *v.* Wiederer (159 U. S., 555), wherein an instruction given in the United States Circuit Court for the Southern District of New York and approved by the Supreme Court of the United States was as follows:

> The trial court instructed the jury that the burden was on the plaintiff to establish that the articles were parts of clocks; that in determining that question it would not be necessary for the jury to say that they were exclusively used for that purpose; that the fact that an article chiefly used for one pur-

pose had been used by some for a purpose for which it was not originally intended would not change its tariff nomenclature; that if the jury should find that the articles were chiefly used as parts of clocks, that that would determine their tariff classification, but, on the other hand, that they must be chiefly and principally used for that purpose; that if they are articles with no distinguishing characteristics, just as applicable for use in fancy boxes or in coach lamps as they are for clocks, then it would be entirely proper to say that they have no distinguishing characteristics as parts of clocks; that they might be used for one purpose just as well as for another; and if the jury should find as to those articles, or any of them, that they have several uses to which they are perfectly applicable, then as to those articles the verdict should be for the defendant.

The Supreme Court in the last-mentioned case seems to have adopted the generally accepted rule that chief use in such cases may be shown either by the character of the article itself, as imported, wherein it is evidenced that it is intended and susceptible to but a single use, declared by the statute, or that it may be shown by proof that it is intended and serviceable substantially for the purpose alone declared by the statute within the terms of which it is claimed to be dutiable. That is to say, that it may be brought within the terms of the statute either by evidence manifested by the articles *per se* or given at the trial. That is the accepted doctrine and the one which has received the approval of this court. Richard & Co. *v.* United States (3 Ct. Cust. Appls., 306; T. D. 32587); United States *v.* Lyon & Healy (4 Ct. Cust. Appls., 84; T. D. 33366); Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528).

Applying these principles to the record and samples before us, and as heretofore described, it would seem that as to the violin and cello necks they should be properly classifiable as parts of musical instruments. Their physical construction is such as to plainly render them unserviceable for any other purpose and to clearly identify them and their future use as parts of musical instruments.

We are unable to discover in this record, which consists solely of the several returns of the appraising officer at the port of Chicago and the samples, evidence which would justify the conclusion that the hollow cylindrical pieces of wood and ivory are intended for use as parts of musical instruments. Their appearance certainly does not so confine their possible use. The report of the appraising officer in language declares that they are not finished articles, and upon the whole it is perfectly consistent with this record and the appearance of the samples that they might be used for a variety of purposes.

We are, therefore, of the opinion that as to the latter classes of articles the decision of the Board of General Appraisers should be affirmed, and as to the former it should be reversed.

*Modified.*