UNITED STATES *v.* WYMAN & Co. (No. 1426).[1]

TOYS OF COTTON GOODS.

The merchandise consists of cotton cloths in patterns ready to be cut and sewed to make single garments, these to be worn by young children. The decision is limited to the articles, samples of which were produced. These cotton goods can hardly have any utility beyond that of a mere plaything, and they are sufficiently advanced in manufacture to be treated as parts of toys.

United States Court of Customs Appeals, January 15, 1915.

APPEAL from Board of United States General Appraisers, Abstract 35927 (T. D. 34571).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, on the brief), for the United States

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case consists of cotton cloths imported in patterns ready to be made into children's pinafores and

---

[1] Reported in T. D. 35146 (28 Treas. Dec., 220`.

highly colored and decorated with characters corresponding to those used in the uniform of the lancer or dragoon, respectively. As imported, each piece is ready to be cut and sewed to make a single garment, which may be worn by young children. The goods were classified for duty under paragraph 324 of the act of 1909 as partly manufactured wearing apparel composed of cotton. The importers protested against this assessment, claiming the goods to be dutiable under paragraph 431 as toys or parts of toys. The board sustained the protest and the Government appeals.

Paragraph 418 of the act of 1897 contained a provision in all respects similar to the present paragraph 431, except for the addition in the latter paragraph of the term "parts of toys." The board had before it in 1904 certain clown sets composed in part of wool attached to cardboards, which consisted of loose-fitting gowns, such as clowns usually wear, gaudily decorated with grotesque figures of birds, animals, and flowers, and held the same classifiable as toys. From this decision an appeal was taken to the Circuit Court for the Eastern District of Pennsylvania, but upon authority of the Attorney General was discontinued.

Limiting that case, as we should be disposed to do, to articles which are strictly of the same class as those involved in the case cited, it is fair to assume that the language employed in the act of 1909 was intended to be used in view of this judicial construction, and the language appearing in the present act should be given a like construction unless there be convincing reasons for another. This construction goes to the extent only of treating that case as authority for the class of cases which were there directly involved. Whether it should be extended to such articles as are in imitation of uniforms of soldiers, firemen, or policemen, but being adapted to use as ordinary wearing apparel, is a question not now before the court. As to the present articles, the board said:

Whether the articles are worn by children or are used for making dolls, we are of opinion that they are toys—that is to say, playthings, things intended and designed for the amusement of children only, and which by their very nature and character are reasonably fitted for no other purpose. No parent would buy a thing of this character as an article of clothing. It is a toy, pure and simple, and is intended to be worn by children while at play. It is designed to be made into soldier suits, rough-rider suits, Indian suits, sailor suits, etc., to be used in play by children of the age of perhaps 3 or 4 years.

We limit ourselves in this case to the articles of which samples are produced. We are not prepared to say that all imitations of sailor suits, or all imitations of rough-rider suits, or, for instance, Boy Scout suits, may not be of a character which would be well adapted for the common wear of children, and have to that extent a utilitarian purpose which would distinguish them from toys. But the articles here in question are so highly embellished as to be almost

said to be fantastic. If they have any utility beyond that of a mere plaything, it certainly would be a very limited and restricted one. They would be designed to engage the fancy of the child and furnish him amusement in an assumed representation of the lancer or dragoon. We are not prepared to say that as to these articles the finding of the board was not justified.

It is contended, however, that these articles are not complete toys, as they require a process of manufacture after importation, and it is also urged that they are not parts of toys, because, as imported, they comprise the entire article. This, however, is not quite accurate, as to be complete they require sewing, hooks and eyes, or buttons. We think that they may be said to be parts of toys. The portion which is to be cut away is negligible and insignificant.

That they are sufficiently advanced to be treated as parts of toys is supported by the decision of this court in United States *v.* Lyon & Healy (4 Ct. Cust. Appls., 438; T. D. 33873).

It results that the decision of the board is *affirmed.*