UNITED STATES *v.* CARR (No. 2161). CARR *v.* UNITED STATES (No. 2163).[1]

1. CONSTRUCTION, PARAGRAPH 119, TARIFF ACT OF 1913—"AUTOMOBILES * * * AND AUTOMOBILE BODIES"—AIDED BY CONTEXT.

It is difficult to believe that, in the provision of paragraph 119, tariff act of 1913, for "Automobiles * * * and automobile bodies," the intention of Congress was to include automobiles so incomplete as to be wholly incapable of use or service as such, and the same conclusion may well be reached as to automobile bodies. The absence from the provision of familiar tariff phrases such as "parts thereof," "finished or unfinished," and "wholly or partly finished," would tend to the same conclusion. Moreover, to hold automobile body frames dutiable as automobile bodies would make these *unfinished* parts of automobiles dutiable at 45 per cent ad valorem, whereas the paragraph levies duty on *finished* parts at only 30 per cent.

2. SAME—AIDED BY LEGISLATIVE HISTORY—AUTOMOBILE BODIES.

Originally paragraph 119, tariff act of 1913, contained a provision for *finished* automobile bodies. The striking out of the word "finished" does not give rise to the inference that Congress intended the provision to cover unfinished automobile bodies. Rather is it more reasonable to believe that the word was stricken as surplusage.

3. AUTOMOBILE BODY FRAMES—"BODIES IN THE WHITE"—"BODIES IN PROCESS."

The skeletons or frames of automobiles bodies, known in the trade as "bodies in the white" or "bodies in process," only about half finished as to value, lacking floor boards, doors, and other important parts of automobile bodies, and needing to be painted and upholstered, are not "automobile bodies," under paragraph 119, tariff act of 1913. Their classification in the alternative as articles in chief value of metal, under paragraph 167, is stipulated by the parties.

United States Court of Customs Appeals, May 26, 1922.

CROSS-APPEALS from Board of United States General Appraisers, G. A. 8498 (T. D. 38994).

[Modified.]

*William W. Hoppin,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) contra.

[Oral argument May 23, 1922, by Mr. Hoppin and Mr. Tompkins.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

The importations involved in this case came from Canada, and were entered for duty at the port of Detroit. The appraiser described the merchandise as automobile bodies; duty was assessed accordingly at the rate of 45 per cent ad valorem under the eo nomine provision for automobile bodies contained in paragraph 119 of the tariff act of 1913.

The importer protested against the assessment, claiming that the imported articles were not actually automobile bodies, but only skeletons or frames for such bodies, and that these were designed to be advanced after importation to the condition of automobile bodies

[1] T. D. 39147.

by means of additional material and labor. The importer contended for an assessment of 20 per cent ad valorem upon the articles as manufactures composed in chief value of metal, under paragraph 167 of the act. Other claims included within the protest need not now be mentioned.

The issue was tried upon exhibits and testimony by the Board of General Appraisers, and the protest was sustained. The board found upon the evidence that the articles as imported were not automobile bodies but only the skeletons or frames thereof, and held them to be dutiable at the rate of 15 per cent ad valorem as manufactures composed in chief value of wood, under paragraph 176 of the act. However, since that decision the parties have stipulated upon the record that the component material of chief value in the articles is in fact iron, and that in case the decision of the board should be sustained in other particulars by this court, it should nevertheless be modified so as to direct an assessment upon the articles at the rate of 20 per cent ad valorem, as manufactures of metal under paragraph 167 of the act.

It may be noted here that the decision now upon appeal follows a former decision of the board involving similar merchandise, in the case of John V. Carr, T. D. 38480 (G. A. 8369), and that the record in the former case has been regularly incorporated into that of the instant case. It may further be noted that this appeal involves three protests, and that the articles covered by one of these differed somewhat in degree of advancement from the others. This difference will be referred to again hereinafter.

The following is a copy of the paragraph under which the assessment was made:

119. Automobiles, valued at $2,000 or more, and automobile bodies, 45 per centum ad valorem; automobiles valued at less than $2,000, 30 per centum ad valorem; automobile chassis, and finished parts of automobiles, not including tires, 30 per centum ad valorem.

It may be repeated in brief that the question is whether the imported articles were dutiable under the eo nomine enumeration of automobile bodies in the foregoing paragraph. For if they were not, it is agreed that they should be assessed with duty as manufactures in chief value of iron under paragraph 167.

A reading of the record discloses the fact that there is little if any real dispute between the parties concerning the actual physical character and condition of the dutiable articles at the time of their importation. It appears beyond question that each article consisted of the wooden frame or sill of an automobile body, with the panel posts in each side together with the panel framing, also the metal part which covers the framework. The metal included the panels, also that surrounding the tonneau and the so-called shroud (not the

hood) which extends partly over the engine. This was held together by such hardware as remains unexposed in a finished body.

The articles thus described were undoubtedly designed to be completed into finished automobile bodies by means of additional material and labor, and they were fully and finally appropriated to that use and purpose. In fact they possessed no commercial value for any other purpose. But as imported they were far from being complete bodies, for they lacked various substantial parts which remained to be added after importation before they would be capable of any kind of use or service as automobile bodies. As imported they were without floor boards or toe boards, without a coil or instrument board, without doors, having neither windshield brackets nor top irons, and with the exposed hardware not yet in place. Furthermore the articles covered by two of the protests, when imported, were wholly unpainted, unlined, and untrimmed, being without cushions or upholstery of any kind; while those covered by the third protest had only one or two coats of priming paint upon them, and had the backs of both front and rear seats trimmed with fibroid, although they also lacked cushions. And, furthermore, the articles all lacked many minor finishings ordinarily to be found in automobile bodies when in service, such as robe rails, foot rails, tool compartments, battery boxes, and other fittings.

It is accordingly manifest that the dutiable articles as imported were totally incapable of actual use or service as automobile bodies, and that many and various substantial and essential parts were required to be added to them before they would become fit for that purpose; and furthermore that they required to be painted before they would be regarded commonly as completely finished automobile bodies. It appears from the testimony that the cost of finishing one of the imported articles into a completed body would about equal the cost of the article as imported; that is to say, the cost of the imported article would equal about half that of the finished body of which it would serve as a foundation. Of course these proportionate values might vary somewhat in the case of different styles of bodies or different kinds of cars.

With these facts in mind we come to inquire whether the imported articles in their condition at importation properly fall within the eo nomine enumeration of " automobile bodies " within the intendment of paragraph 119, and we reach the conclusion that they do not. For in order to classify them thereunder one of two things must appear, to wit, either they must be known under that name in common speech, or if not, they must be definitely, uniformly, and generally known under that name in the trade of this country.

And, first, in respect to the latter alternative, to wit, that of a commercial designation of the articles as automobile bodies, we may say

that the board has found against this claim upon the evidence, and we find no ground in the record for a reversal of that decision. We will not discuss the evidence in detail, but will simply say that it fairly and fully sustains the finding of the board in that particular. It appears from the testimony that such articles as these are in the trade much more commonly, if not indeed generally, called "bodies in the white" or "bodies in process," for the manifest purpose of distinguishing them from finished bodies, and that only finished bodies bear the unqualified name of "automobile bodies." It is true that there is testimony in the record tending to show that in some shops such articles are simply called bodies, but we think that this usage was a mere abbreviation adopted in certain cases for convenience as a shop practice of limited application only.

In coming next to determine the force and effect in common speech and ordinary usage of the statutory term "automobile bodies," we think that it would naturally apply only to such bodies as are substantially completed when imported, and as are then reasonably adapted to and suitable for use and service as such. We think that this interpretation is sustained by well-recognized principles and authorities, and accordingly we hold that the articles as imported had not been advanced to the tariff status of automobile bodies.

In United States v. Blumenthal (51 Fed. 76) it was held that certain pearl disks, designed for ultimate use as buttons, and resembling buttons in every particular, except that they were not pierced with holes in the center, could not be classified for duty under a provision for "pearl and shell buttons," but should be assessed as "manufactures of * * * mother of pearl * * * not specially provided for." Judge Lacombe, speaking for the court, said:

The question to be determined here is whether they are "buttons" within the language of the tariff act—language which is to be taken in its ordinary meaning, unless it appears that trade and commerce have given some specific meaning to the words employed. Now, although they may stop short of being complete buttons by a very small measure, that circumstance is immaterial; and it is also wholly immaterial with what intent the process of their manufacture was stopped at that point. * * * There is no finding of the board of appraisers as to whether the word "buttons" or the words "pearl buttons" have a distinct commercial meaning in trade and commerce. According to the usages of common speech, these articles here are not completed buttons, because they lack the essential element of a device whereby they may be affixed to garments. * * * It seems to be that they come short of the designation "buttons," as used in the trade, and in fact have not yet been sufficiently advanced in manufacture to become the "buttons" of every-day speech.

In Knott v. United States (9 Ct. Cust. Appls., 93; T. D. 37948), certain carbon blocks designed for use in making carbon brushes and plates, and cut to sizes appropriate for that use, were held to be dutiable as "manufactures of carbon," rather than under a pro-

vision for "brushes, plates, * * * composed wholly or in chief value of carbon." In its decision the court said:

Accepting the foregoing testimony as correct, we think that the importations in question are certainly manufactures of carbon, but that they are merely the bulk or block material from which brushes or plates may be manufactured, and are not themselves either carbon brushes or carbon plates. They can neither be sold nor used as such articles and they do not attain to the name or character of either of them until after substantial alterations in size and condition are effected by means of domestic processing.

See also Fenton *v.* United States (1 Ct. Cust. Appls. 529; T. D. 31546) (cork floats); Mitchell Co. *v.* United States (10 id. 104; T. D. 38371) (railroad ties); Vanacker *v.* Spalding (24 Fed. 88) (toys); Vanacker *v.* Seeberger (40 Fed. 57) (toys); United States *v.* Merck (66 Fed. 251) (medicinal preparations); United States *v.* Simon (84 Fed. 154) (artificial flowers); Cowl *v.* United States (124 Fed. 475) (medicinal preparation); Hunter *v.* United States (126 Fed. 894) (paper envelopes).

We think, therefore, that the present importations, including those covered by the third protest as well as the other two, were no more than parts of automobile bodies as commonly understood, being merely the frames or skeletons upon which the bodies were to be constructed. And upon that subject we may note that the enumeration of automobile bodies contained in paragraph 119, supra, makes no provision for "parts thereof," nor for bodies "finished or unfinished," or "wholly or partly finished," which familiar phrases so frequently appear in tariff provisions designed to cover and include unfinished articles or their parts. The language of the paragraph accordingly does not comprehend such parts of bodies as those now in controversy.

Furthermore, the dutiable clause of paragraph 119 now in question reads as follows, to wit, "Automobiles, valued at $2,000 or more, and automobile bodies." It is difficult to believe that the enumeration of "automobiles" therein was designed to cover automobiles which are so incomplete as to be wholly incapable of use or service as such. And it seems manifest that the enumeration was not intended to include parts of automobiles, since a later clause of the paragraph contains an eo nomine provision for "finished parts of automobiles * * * 30 per centum ad valorem." It is not reasonable to believe that Congress intended to impose a duty of 45 per cent ad valorem upon unfinished parts of automobiles, and at the same time assess finished parts thereof with a duty of only 30 per cent ad valorem. The paragraph, it should be noted, also imposes duty at the rate of 30 per cent ad valorem upon automobile chassis. And again it seems reasonable to interpret the provision as including only complete chassis and not parts thereof. The rule of ejusdem generis therefore tends to sustain the conclusion which we have indicated.

We have referred in argument to the legislative history of paragraph 119, and to the amendments which altered the phraseology thereof in the course of its passage through Congress. It appears that in the bill as it passed the House, the clause containing the present enumeration read as follows, to wit: "Finished automobiles and automobile bodies, 45 per centum ad valorem;" but that when finally enacted it was made to read as above copied to wit, "Automobiles, valued at $2,000 or more, and automobile bodies, 45 per centum ad valorem." It is contended by the Government that the omission of the word "finished" from the clause as aforesaid indicates a legislative intention to include unfinished automobiles and automobile bodies within the enumeration in question. We can not agree with that argument since we think it more reasonable to believe that the word "finished" was omitted from the construction simply because it was superfluous, and that the force and effect of the provision was not altered thereby.

We have examined the authorities cited by the Government in support of its claim, especially the case of the Athenia Steel & Wire Co. v. United States (1 Ct. Cust. Appls. 494; T. D. 31528), but we find in them no sufficient answer to the views above expressed. The case last cited related to certain flat pieces of steel, 3 inches by one-eighth of an inch in thickness, and 30 feet long, and known commercially as "flat rods." They were assessed with duty under the enumeration of "steel in all forms and shapes not specially provided for," whereas the importer claimed assessment upon them under a provision for "wire rods." The importer's demand was based upon the claim that the steel in question was dutiable as "wire rods," because it was appropriated to use as a material for making wire. The court held against the claim, saying, "In order to bring any material for manufacture within a tariff designation which covers one of its ultimate uses it should be so far advanced by the process applied thereto in the line of that particular use that, either from an examination per se evidences of its ultimate use are made clear, or so far advanced that its utility in any of its other possible uses shall have been destroyed." The inference from this quotation might justify a finding that the articles now in question are material for the construction of automobile bodies, but it would not sustain the claim that they already actually are such bodies. For, while it was claimed in the Athenia case that the steel rods were wire rods, that is to say material for making wire, it was not claimed that they already were in fact wire itself. In the case of United States v. Lyon & Healy (4 Ct. Cust. Appls. 438; T. D. 33873), which is cited by the Government, certain violin and cello necks of wood were held to be dutiable as "parts of musical instruments." It is at once manifest that the case can bear no relation to the

present question, since paragraph 119, supra, contains no provision for "parts of automobiles." It may be noted that the violin and cello necks in question were not held to be themselves musical instruments.

We therefore agree with the conclusion of the board that the present articles were not dutiable at the rate of 45 per cent ad valorem under the enumeration of automobile bodies; and accordingly we follow the stipulation of the parties aforesaid, and hold that the merchandise was dutiable at the rate of 20 per cent ad valorem as articles composed wholly or in chief value of metals, under paragraph 167 of the act. Since the board's decision found the component material of chief value to be wood, that decision is modified as aforesaid, but in other respects it is affirmed. *Modified.*