## UNITED STATES v. BATA SHOE CO., INC.

**No. 4667.**—Invoices dated Zlin, Czechoslovakia, September 1, 1936, etc.
Certified September 3, 1936, etc.
Entered at New York September 21, 29, 1936.
Entry Nos. 738183, 738182, 741984.

### Second Division, Appellate Term

(Decided October 24, 1939)

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*James W. Bevans* for the appellee.
*Lamb & Lerch* (*Kenneth G. Osborn* of counsel), *amici curiae.*

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: This is an application for review brought by the United States from a judgment rendered by a single judge involving the proper dutiable value of certain merchandise described on the invoices as "unfinished velvet boots," imported from Czechoslovakia.

The case was originally tried before Presiding Judge McClelland who found that the proper basis for determining dutiable value was cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930, but in his opinion all of the elements necessary to establish such value were not shown in the record before him, and he therefore directed "that the appeals be restored to the calendar in order that opportunity may be afforded counsel for the plaintiff and the defendant to offer additional evidence upon the basis of which I may find the statutory cost of production of the unfinished boots involved." (Reap. Dec. 4330.) Later, the case was heard and finally submitted for decision before Judge Sullivan, after both sides had offered additional documentary evidence relating to cost of production of the imported merchandise. In his decision based upon the record before him, which included the supplementary evidence offered at later hearings, Judge Sullivan concurred in all of the views

expressed by Presiding Judge McClelland in the earlier decision, Reap. Dec. 4330, and found that the cost of production for the instant merchandise was represented by the invoiced and entered value. From that decision of Judge Sullivan, Reap. Dec. 4512, the United States has appealed.

Appraisement of the imported merchandise was made by reason of a Presidential proclamation published in T. D. 46158, on the basis of the American selling price of a domestic article which the appraiser accepted as like or similar within the definition of "American selling price" as set forth in section 402 (g) of the Tariff Act of 1930. The said proclamation, based upon a report of the United States Tariff Commission, was issued under authority contained in section 336 of said tariff act, and proclaimed a finding that the rate of duty necessary to equalize the differences in the cost of production of—

* * * boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber.

produced in the United States, and like or similar articles produced in Czechoslovakia and Japan, was 35 per centum ad valorem based upon the American selling price of such articles.

It appears from the testimony, as well as from an examination of the sample of the imported merchandise as represented by Collective Exhibit 1, that the articles as imported were incomplete or unfinished, consisting merely of calendered rubber soles, rubber foxing, and uppers of velveteen; and that they required the addition of a tongue, eyelets, laces, and fur trimming to bring them to the condition of Illustrative Exhibit A, which was admitted in evidence as representative of the completed or finished article, that was offered and sold in the trade and commerce of this country. It is further disclosed by the record that the finished articles are known variously as carriage boots, gaytees, motor boots, and dress galoshes. Since there seems to be no dispute concerning the particular name by which the articles in question are known in the trade, we shall, for the purposes of convenience, refer to them as boots.

Based upon the premise that the instant merchandise was imported in an unfinished condition, it is urged by the importer corporation (appellee here), and its contention was upheld by the court below, that the said Presidential proclamation is limited in scope to finished articles only, and that therefore the imported unfinished boots are not within the purview of said proclamation. The Government (appellant here) contended before the court below, as it does here, that the language employed in said proclamation is clear and unambiguous, and that the terms "boots, shoes, and other footwear" as used

therein are generic terms, sufficiently broad and comprehensive to include such merchandise in any form or condition.

It will be noted that the said proclamation refers to the above mentioned merchandise as that "provided for in paragraph 1530 of title I of the tariff act," the pertinent provision of which paragraph reads as follows:

* * * boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials * * *.

Hence, the articles contemplated within said proclamation, in our judgment, are only such as are embraced within the above quoted provision of paragraph 1530 (e) of the tariff act. That conclusion is in harmony with the view on the same point, expressed in the opinion of Presiding Judge McClelland, Reap. Dec. 4330, in the following language:

* * * insofar as the character of merchandise covered is concerned the scope of the proclamation is no greater than the scope of the tariff provision which it was designed to affect.

One of the issues thus presented is whether the provision in paragraph 1530 (e), *supra*, includes boots, shoes, and other footwear of the particular kind or class therein specified, in an incomplete or unfinished condition, as well as the finished articles, themselves.

The lower court found that the boots in question were not substantially completed, and that they were incapable of performing the use for which intended in their condition as imported, and therefore held that such articles were not within the purview of the Presidential proclamation, *supra*. In reaching its conclusion, the court followed the rule laid down in the case of *United States* v. *Carr* (11 Ct. Cust. Appls. 345; T. D. 39147) which held in substance that an *eo nomine* provision which contains no qualifying words or phrases to indicate whether or not only completely finished articles are intended to be covered thereby includes only such articles provided for as are "substantially completed when imported and as are then reasonably adapted to and suitable for use and service as such."

It is our opinion that the record before us warrants such a conclusion. It is fairly established herein that the merchandise in question was imported in an unfinished condition, and that, as imported, it was neither serviceable nor salable. The testimony of all of the witnesses, as well as an examination of the samples, clearly demonstrates that the articles in question, in their imported condition, required the addition of a tongue, eyelets, and laces, for which they are particularly designed to be fitted; and that such essential parts,

together with a decorative fur trimming, were actually fitted to render the imported unfinished boots capable of performing the use for which they are intended, to wit: to prevent the ingress of cold air, rain, and snow when worn on the feet.

Moreover, the approximate cost of the operations necessary to place the said articles in a finished condition, in our judgment, represents a substantial part of the cost of the finished article. Obviously, a comparison between the landed cost of the imported merchandise, based on values and conditions in the country of exportation, and the cost of finishing operations in this country would not represent a true relationship between the value of the imported merchandise in its unfinished condition, and the cost to bring it to a finished condition. A true comparison, in our judgment, would be one between the relative costs in one market, either in the country of exportation or in this country.

There is nothing in the record to show the cost of finishing the boots in question in Czechoslovakia where they were manufactured, so that such relative cost might be applied to the value of the imported articles in their unfinished condition. The record is also silent concerning the value in the United States of a comparable domestic boot finished to the extent of the imported articles. But there is testimony by one of the witnesses introduced by the Government at the trial below to the effect that the estimated cost of placing a tongue, eyelets, and laces in the unfinished boots in question would be from 12 to 15 cents a pair, depending on the quality of the material used in the tongue. Applying that cost to the appraised value of $2.14 per pair, which represents the American selling price of what the appraiser regarded as a like or similar domestic article under the statute, we find that the cost of said finishing operations would be between 5.6 per centum and 7 per centum of the selling price of a pair of the finished articles. It must be borne in mind, however, that the selling price of $2.14 includes overhead charges as well as a percentage of profit which are not properly chargeable as production costs. Hence, the relative production cost of adding the tongue, eyelets, and laces to the imported unfinished boots would be considerably higher than 6 or 7 per centum, and would, in our opinion, represent a substantial part of the cost of a pair of finished boots.

We therefore concur in the conclusion of the court below and hold that the merchandise in question consists of unfinished boots which, in their condition as imported, were not substantially completed and then not reasonably adapted to and suitable for use and service as such, and under the authority of the *Carr* case, *supra*, are not within the purview of the Presidential proclamation published in T. D. 46158.

In his brief, counsel for appellant states:

If importer's theory be correct, we can foresee a multitude of articles, under conditions similar to the imported merchandise, whereby the Customs revenue would be considerably ravished.

The same point was raised before the court below, and we quote with approval what Presiding Judge McClelland said in connection therewith:

Without speculating upon the possibility of the condition happening which counsel predicts, I deem it pertinent to say that its correction would require legislative, rather than judicial action. It has long been settled by judicial authority that an importer may bring his merchandise into the United States in any condition permitted by the tariff act existing at the time of importation which will result in the imposition of the lowest rate of duty applicable thereto.

\*        \*        \*        \*        \*        \*        \*

If the importer in the case at bar deliberately had the articles in issue manufactured to such condition as would leave them outside the scope of the proclamation, *supra*, this court cannot extend the terms thereof so as to include the imported articles, however desirable from a protection and revenue standpoint that might be.

Those views are in line with the decision of the United States Supreme Court in the case of *United States* v. *Schoverling Daly & Gales* (146 U. S. 76), which affirmed the Circuit Court in its decision in Re Schoverling et al., reported in 45 Fed. Rep. at page 349. See also *Michaelian & Kohlberg, Inc.*, v. *United States* (22 C. C. P. A. 551, T. D. 47554).

Having determined that the instant merchandise is not within the scope of the said Presidential proclamation, it necessarily follows that the proper basis of appraisement for said merchandise is one of the values, other than American selling price, set forth in section 402 of the Tariff Act of 1930.

At the trial below the plaintiff (appellee here) offered in evidence, and they were admitted as Exhibits 6 and 8, two affidavits of a director of the exporter of the instant merchandise who testified that he is familiar with all of the shoes manufactured and sold by his concern in Czechoslovakia and for export to various countries including the United States; that the unfinished boots covered by the instant importations were made under an exclusive agreement with the importer herein; that they are not offered for sale to any other purchasers in the United States in their condition as imported; and that unfinished boots such as or similar to those under consideration are not sold or offered for sale in the home market either for home consumption or for exportation to countries other than the United States.

On the basis of such testimony, which is corroborated by evidence introduced on behalf of the United States and contained in the special agent's report admitted in evidence as Exhibit 10, we hold that at the time of exportation of the merchandise in question there was no foreign value, no export value, or no United States value, as

those values are defined in section 402 of the Tariff Act of 1930, for such merchandise.

Therefore, under the statute the proper basis for appraisement of the instant merchandise must be cost of production, which is defined in section 402 (f) of the Tariff Act of 1930, as follows:

(f) COST OF PRODUCTION.—For the puurpse of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The proof adduced before the court below to show cost of production consists of two affidavits which were offered on behalf of plaintiff (appellee here), and which were received in evidence as Exhibits 6 and 8, and two special agent's reports introduced on behalf of the Government, which were admitted in evidence as Exhibits 9 and 10.

The affidavit, Exhibit 6, was submitted at the original hearing before Presiding Judge McClelland, who found it to be insufficient to find statutory cost of production. An examination of said affidavit reveals that it contains no evidence relating to the cost of containers or coverings and packings, which is a necessary factor in finding cost of production within the definition set forth in section 402 (f), supra. Since he was unable on the basis of the record before him to determine cost of production for the instant merchandise, Presiding Judge McClelland ordered the case restored to the calendar for further proof, as hereinbefore stated.

Pursuant to said order of Presiding Judge McClelland, Exhibits 8, 9, and 10 were offered at later hearings. The report, Exhibit 9, offers little, if any, aid toward ascertaining the cost of production of these unfinished boots. Said report deals largely with the factory and administrative overhead expenses of the exporter in all of its operations. The report is not limited to the merchandise in question, but relates to various kinds of merchandise manufactured by the manufacturer and shipper of the instant merchandise. Said report contains only one reference to unfinished velveteen boots where the

factory overhead for one pair of such boots is set forth in detail. The total amount of such expenses agrees with the figure given for the same item in the affidavit, Exhibit 8, and the special agent's report, Exhibit 10. The latter exhibits set forth identical figures showing the cost of production of a pair of the unfinished velveteen boots covered by the importations under consideration. Such cost as given in both of said exhibits is as follows:

| | |
|---|---|
| Material Total | Cr. 6. 99 |
| Labor Total | 2. 70 |
| Overhead Total (Factory and Administrative) | 1. 40 |
| Packing | 0. 67 |
| Profit (11 percent of Material, Labor, and Overhead) | 1. 24 |

Converting the total figure of Cr. 13 per pair into United States currency at the rate of $0.0413, the applicable rate of exchange as reported by the Treasury Department in T. D. 48509, we obtain a result of $0.5369, or practically $0.54 a pair, the invoiced and entered value.

We have given careful consideration to each assignment of error alleged by the attorney for the appellant, and we conclude that no ruling of the court below, either upon admission of evidence or its refusal to do so, would justify this division in reversing the judgment of the lower court.

We therefore find the following facts:

(1) That the merchandise in question consists of certain unfinished boots, consisting of calendered rubber soles, rubber foxing, and uppers of velveteen, from Czechoslovakia.

(2) That such unfinished boots are not within the purview of the Presidential proclamation published in T. D. 46158.

(3) That there is no foreign value, no export value, or no United States value, as such values are defined in section 402 of the Tariff Act of 1930, for said unfinished boots.

(4) That the proper basis for appraisement for said unfinished boots is cost of production as that value is defined in section 402 (f) of the Tariff Act of 1930.

(5) That such cost of production for said unfinished boots is 54 cents a pair, United States currency, the invoiced and entered value.

(6) That the correct dutiable value for said unfinished boots is the invoiced and entered value.

We hold as a matter of law that the correct dutiable value of the instant merchandise is that set forth in findings of fact 5 and 6, as above set out, and that the judgment of the court below is hereby affirmed.

Judgment will be rendered accordingly.