(C. D. 500)

Frank P. Dow Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided May 20, 1941)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil* and *Richard F. Weeks*, special attorneys), for the defendant.

WALKER, Judge: In this suit against the United States arising at the port of Seattle plaintiff seeks recovery of certain customs duties claimed to have been illegally exacted on an importation of merchandise described on the invoice as "celluloid strips." The collector of customs classified the articles as:

handles and backs for tooth brushes * * * composed wholly or in chief value of any product provided for in paragraph 31

and assessed duty thereon at the rate of 1 cent each and 50 per centum ad valorem under the provision therefor in paragraph 1506 of the Tariff Act of 1930. The protest claim is that as imported the articles were not handles for tooth brushes and are properly classifiable under the provision in paragraph 31 of the same act for:

all compounds of cellulose (except cellulose acetate * * *) * * * made into finished or partly finished articles of which any of the foregoing is the component material of chief value, not specially provided for

at the rate of 60 per centum ad valorem.

It seems clear from the record that the articles are composed of celluloid, a compound of cellulose not cellulose acetate, so that the issue is whether the articles, which are represented by exhibit 1, are classifiable under the provision for "handles and backs for tooth brushes" or for "partly finished articles" of celluloid.

The record establishes that in order to make a tooth brush from the imported articles they have to be molded, trimmed, smoothed by abrasion, polished, drilled with holes, and the holes filled with bristles, and apparently the first four operations above described would have to be performed before they could be considered to be finished tooth brush handles. As imported and represented by exhibit 1 the articles are about 6 inches long by ¼ inch thick, and in width tapering from ½ inch to ⅜ inch, the sides being scraped or gouged to a depth of ⅛ inch beginning at a point 1¼ inches from the smaller end and continuing for about an inch. They have the rough form of a tooth brush handle. From an examination of the record and samples we conclude that the articles are unfinished tooth brush handles.

The question then presents itself, are unfinished tooth brush handles such as those here involved classifiable under the provision in paragraph 1506 for "handles and backs for tooth brushes"? Whether unfinished articles may be classified for duty purposes under a tariff provision naming the article without any words of extension such as "finished or unfinished" or "wholly or partly manufactured" has been the subject of decision by this and our appellate court, and research indicates that the lines of thought expressed thereby have not been consistent.

One line of cases is represented by *United States* v. *Carr*, 11 Ct. Cust. Appls. 345, T. D. 39147. That case involved skeletons or

frames of automobile bodies, known in the trade as "bodies in the white" or "bodies in process," and constituting unfinished automobile bodies intended to be advanced after importation to the condition of automobile bodies. They were held not to be classifiable under the provision in paragraph 119 of the Tariff Act of 1913 for "automobile bodies", and in so holding the court said:

In coming next to determine the force and effect in common speech and ordinary usage of the statutory term "automobile bodies," we think that it would naturally apply only to such bodies as are *substantially completed when imported, and as are then reasonably adapted to and suitable for use and service as such.* [Italics added.]

The other line of cases is represented by *Waltham Watch Co.* v. *United States*, 25 C. C. P. A. 330, T. D. 49425. That case involved unfinished pillar or bottom plates for watches, and the question was whether they were dutiable under the *eo nomine* provision in paragraph 367 (c) (2) of the Tariff Act of 1930 for "pillar or bottom plates or their equivalent." In determining the issue the court quoted, with approval, the following from *Riga* v. *United States*, Abstract 19740 (T. D. 29288), involving the question whether rough-bored barrels, on which the operation of rifling, polishing, and coloring had yet to be performed in this country, were classifiable under a tariff provision for "rifles and parts thereof":

We believe, when the article as imported affords evidence as to the use to which it is to be applied and has reached a form and stage wherein it is fit for no other useful purpose than as a part of a rifle, that then, for tariff purposes, it may safely be regarded as within the provision for parts of rifles.

The court also cited and quoted from its opinion in *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873, wherein the following rule laid down in *Athenia Steel & Wire Co.* v. *United States*, 1 id. 494, T. D. 31528, is referred to:

In order to bring any material for manufacturing within a tariff designation which covers one of its ultimate uses it should be so far advanced by the processes applied thereto in the line of that particular ultimate use that, either from an examination *per se* evidences of its ultimate use are made clear, or so far advanced that its utility in any of its other possible uses shall have been destroyed.

and from its opinion in *Richard & Co. et al.* v. *United States*, 4 id. 470, T. D. 33883, as follows:

The importers, however, urge that these articles are not parts of musical instruments within the meaning of the paragraph, but are unfinished parts; are in fact materials which have to be subjected to a further substantial process of labor before they are adapted for use.

We understand that the evidence establishes as to each of these articles that, owing to the various sizes of violins, these parts have been finished and perfected as far as practicable until it is known what in substance are to be its companion parts to constitute the finished violin. When this is determined more or less alterations in the parts under consideration must be made before the violin is

finished, but *each one of them has already assumed such a form and shape that not only has its utility for any other use been destroyed but each article in itself bears unmistakable evidence of the purpose to which it is devoted and its adaptation therefore.* [Italics added in the quotation.]

Following these authorities the court in the *Waltham Watch Co.* case, *supra,* held that the unfinished pillar plates involved, which required two classes of operations, viz, drilling and recessing, to be finished, were classifiable under the provision for "pillar or bottom plates, or their equivalent."

On the one hand we have the rule laid down in the *Carr* case to the effect that—

an *eo nomine* provision which contains no qualifying words or phrases to indicate whether or not only completely finished articles are intended to be covered thereby includes only such articles provided for as are "substantially completed when imported and as are then reasonably adapted to and suitable for use and service as such."

The foregoing statement of the rule is taken from the opinion of the Second Division of this court in the case of *United States* v. *Bata Shoe Co., Inc.,* Reap. Dec. 4667.

On the other hand we have the rule represented by the *Waltham Watch Co.* case that such *eo nomine* provision includes an article which has been advanced to a point where its use as the article provided for is made clear, or its utility in any of its other possible uses has been destroyed.

If we were to apply the rule represented by the *Carr* case, *supra,* the celluloid articles at bar would not be included within the term "handles and backs for tooth brushes" used in paragraph 1506 since they were not substantially completed when imported and were not then reasonably adapted to and suitable for use and service as tooth brush handles.

The rule represented by the *Waltham Watch Co.* case, however, if applied to the articles at bar, leads to the opposite result, for it is manifest from the record and an inspection of exhibit 1 that the articles have been advanced to a point where their ultimate use as tooth brush handles has been made clear and their utility in any other possible use has been destroyed.

Were the question of law involved one of original impression we would be inclined to decide it in accordance with the rule expressed in the *Carr* case, *supra.* However, the *Waltham Watch Co.* case, *supra,* is the latest expression of our appellate court on the subject and we are constrained to accept it as controlling the issue herein.

For the foregoing reasons judgment will issue overruling the protest herein.