## RICHARD & CO. *v.* UNITED STATES (No. 746).[1]

CATGUT STRINGS.

    The merchandise, as appears from the testimony, is ready for immediate use as strings for musical instruments. It falls *eo nomine* under paragraph 467, tariff act of 1909.—Davies, Turner & Co. *v.* United States (115 Fed. Rep. 232) distinguished.

### United States Court of Customs Appeals, May 27, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7250 (T. D. 31785).

    [Affirmed.]

    *W. Wickham Smith* and *John K. Maxwell* (*Thomas M. Lane* of counsel) for appellants.
    *William L. Wemple,* Assistant Attorney General (*Charles Duane Baker,* special attorney, on the brief), for the United States.

    Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved in these protests is represented by official exhibits numbered from 1 to 9, both inclusive. It consists of small catgut strings of different gauge or diameter, the first six of which vary in length from 45 to 68 inches and the other three from 23 to 45 inches. They were assessed for duty at 45 per cent ad valorum as strings for musical instruments under paragraph 467 of the tariff act of 1909, the material part whereof is as follows:

    467. Musical instruments or parts thereof,   *   *   *   strings for musical instruments, not otherwise enumerated in this section   *   *   *.

---

[1] Reported in T. D. 32587 (22 Treas. Dec., 991).

The Board of General Appraisers overruled the importers' protests, sustained the action of the collector, and found as a fact that the merchandise was strings for musical instruments within the meaning of paragraph 467.

The importers claim that this finding of fact is contrary to or against the weight of evidence and should be reversed. They also claim that these strings are free of duty under paragraph 529 of the same act, which is as follows:

529. Catgut, whip gut, or worm gut, unmanufactured,

or, in the alternative, that they are dutiable at 25 per cent ad valorem under paragraph 462, the relevant part of which we quote:

462. Manufactures of * * * bladders, catgut, or whip gut, or worm gut * * *.

In substance, the contention of the Government is that the board having found upon evidence which warrants the finding that these strings are in fact strings for musical instruments, its judgment should be upheld.

We have carefully examined the testimony of the several witnesses introduced by both parties. Without incorporating the same herein, it is sufficient to say that therefrom it clearly appears that these strings are of catgut; that catgut is prepared from the small intestines of sheep by a process of cutting, cleaning, and drying, and that such intestines do not become the catgut of commerce until they have been subjected to these processes. ·

It further appears that the business of the appellants is that of importing and dealing in musical instruments; that these strings are designed and intended for use on such instruments; that as imported they are suitable and ready for immediate use thereon; that the individual strings are of uniform gauge and all are cut in lengths commonly required for such uses. Nothing remains to be done to any of these strings before they are applied to such use except that to produce certain tones on some instruments it is required to spin them. The spinning process consists in covering the catgut string with a metallic wire, but such spinning is unnecessary if the string is to be applied to some other instrument or perhaps to be used in another place on the same instrument.

From what we have said it is apparent that these strings are *eo nomine* provided for in paragraph 467.

The importers contend that it was the congressional intent, nevertheless, to exclude catgut strings for musical instruments from that paragraph because it is said in effect that they are otherwise provided for as catgut unmanufactured under paragraph 529, or as manufactures of catgut under paragraph 462.

Prior to the tariff act of 1894, it seems that for some years catgut strings for musical instruments were entitled to free entry. By paragraph 351 of the act of 1894, duty was imposed upon "manu-

factures of * * * catgut." Paragraph 326½ of the same act provided for duty upon "strings for musical instruments not otherwise enumerated," and paragraph 431 provided for free entry of "catgut * * * unmanufactured or not further manufactured than in strings or cords."

Paragraph 448 of the act of 1897 fixed a duty upon "manufactures of * * * catgut." Paragraph 453 of the same act fixed a higher rate of duty upon "strings for musical instruments not otherwise enumerated," and paragraph 516 gave free entry to "catgut * * * unmanufactured."

It will be noticed that the last-mentioned paragraph omitted therefrom the words "or not further manufactured than in strings or cords" found in paragraph 431 of the act of 1894, and we think this is clearly indicative of a legislative understanding and intent to declare that strings or cords of catgut, such as are here involved, are manufactures of catgut, and further, that such manufactures should not be entitled to free entry.

Paragraphs 462, 467, and 529 of the act of 1909 are, for the purposes of this case, identical with the corresponding paragraphs of the act of 1897, and the fact that they were so reenacted seems confirmatory of the construction of those of the act of 1897, which we have suggested.

The merchandise before us is a manufacture of catgut under paragraph 462, is found to be "strings for musical instruments," and is therefore dutiable under paragraph 467 as assessed.

As we view it, the case of Davies, Turner & Co. v. United States (115 Fed. Rep., 232), if it be assumed as controlling if found to be in point, is not opposed to the conclusion we reach. The merchandise in that case, catgut and worm-gut strings, was evidently imported in bunches and for the purpose of manufacturing therefrom, after importation, leaders and snells for fishing purposes and surgical sutures. The court said it was admitted that there was no cruder form of the merchandise than that in which it was imported, and that to make the surgical gut therefrom it was necessary to subject it to processes that increased its value from ten to one hundred fold. It was not claimed or attempted to be proved that the importation was or could be used as strings for musical instruments, nor does it appear from the case that in the condition when imported the merchandise was fit for any particular use until and unless further manufactured. In the case at bar, however, as already appears, the merchandise is immediately ready for a particular use without further manipulation or manufacture.

We do not lose sight of the fact that the evidence in the case at bar shows that these strings may be and sometimes are used for purposes other than as strings for musical instruments, but that use seems to be incidental and does not affect the issue.

The result is that the judgment of the Board of General Appraisers is *affirmed.*