## FISCHER *v.* UNITED STATES (No. 1339).[1]

STRINGS FOR MUSICAL INSTRUMENTS.

"Strings for musical instruments" refers to strings used for the production of musical sounds; and the tailpiece gut of one of the two classes of importations are not so employed. As to the catgut of the other class of importations there is no dispute that when used as a part of an instrument they are used for the purpose of producing musical sounds. They are "strings for musical instruments" and were dutiable as such.

### United States Court of Customs Appeals, May 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34317 (T. D. 34026).

[Modified.]

*Brown & Gerry* for appellant.

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The protests in this case relate to catgut strings, which the evidence shows without dispute may be divided into two classes, and they have been so treated in the arguments.

The first class, that covered by protest No. 619667, is represented by two exhibits, each consisting of a coiled colored string. These exhibits are very like in all respects except that one has a greater diameter than the other. The evidence shows that short pieces of the one having the smaller diameter are used to hold the tailpiece of a violin to the end pin of that instrument while similar pieces of the one having the larger diameter perform a like function upon a cello. An illustrative exhibit, in connection with the evidence, shows that these pieces are applied and adjusted to the respective instruments in the following manner: A piece some 5 or 6 inches in length is cut from the proper coil, its ends inserted or drawn through holes in the tailpiece prepared to receive them, and then heated and fastened together with smaller pieces of catgut. The resulting loop is placed around the end pin of the instrument of which the tailpiece is a part. These small pieces of catgut are subjected to no other operations in adjusting them to the instruments. Almost any other catgut strings could be used for the same purpose provided they were of suitable size and had the requisite tensile strength, which is considerable. The evidence shows that the strings in question when so adjusted do not produce any musical tones and, further, that strings of this class are not used in the production of such tones upon musical instruments.

The second class of merchandise, that covered by protest No. 636279, as shown by the evidence and exhibits, of which there are also

[1] Reported in T. D. 34477 (26 Treas. Dec., 865).

two, is conceded to be strings of the proper length and designed for use in the production of musical tones upon certain musical instruments which are described in the importer's evidence as double bass and which are larger than cellos.

Only two witnesses were called in the case, one the importer, who testified in his own behalf, and the other an importer and dealer in musical instruments, who testified on behalf of the Government. Each of these witnesses appears to have been qualified to testify on the subject to which his evidence was directed.

The importer testified that the strings composing this second class were designed to be spun or wound before being used as strings for musical instruments, although as a matter of fact they were not always wound before being so used; that in some instances before being wound they were smoothed, and that if used upon the instruments without being wound it was necessary to smooth and oil them; that he did not believe unless they were either wound or smoothed, as the case might be, they could be used for producing musical sounds, although he could not say positively they were not suitable for such use in the condition in which they were imported; that in expressing his opinion that they were not suitable he had reference to the higher class of such instruments.

The Government's witness testified that he imported, handled, and sold strings identical in all respects, so far as he could see from an examination thereof, with this class of importations; that in his opinion the strings of this second class were, in the condition as imported, ready to be used on musical instruments; that they were sometimes wound and sometimes not, according to the kind of instrument upon which they were to be used; that oiling had no effect upon the tone produced, but in his opinion was mainly for purposes of preservation.

Both classes of this merchandise were assessed for duty as strings for musical instruments at 45 per cent ad valorem under paragraph 467 of the act of 1909, the material part of which provides for—

Musical instruments or parts thereof;  *  *  *  strings for musical instruments, not otherwise enumerated in this section.  *  *  *

The Board of General Appraisers affirmed this assessment, and in a brief opinion, among other things, said:

The evidence discloses that the merchandise in its imported condition is strings for musical instruments and can be used as such.

The appellant contends that in thus construing the paragraph as covering the first class of strings here the board erred, and claims that the term "strings for musical instruments" therein employed relates only to such as are used in producing musical sounds. We are cited to no judicial or other determination of this question and know of none. In our opinion, however, the expression "strings for

musical instruments" refers only to strings used therein for the production of musical sounds, and it follows from what already appears that the first class of the importations here are not such strings.

The Government, however, contends that nevertheless these strings are *parts of musical instruments* within the meaning of the paragraph and that, therefore, the judgment of the board should be upheld with respect to said first class.

The importer claims that such strings are dutiable at 25 per cent ad valorem as manufactures of catgut not specially provided for under paragraph 462 of the same act, and we think this claim should be upheld.

These colored catgut strings, although they are, so far as the evidence in this case goes, shown to be used as above indicated, are nevertheless manifestly susceptible of any of the various uses to which catgut strings of their respective sizes may be applied, and there is nothing about the strings which indicates that they have been devoted to or set apart for use in the construction of musical instruments. They are not, as claimed by the Government, within the reasoning of this court in the case of United States *v.* Lyon & Healy (4 Ct. Cust. Appls., 438), relating to certain parts, such as violin and cello necks cut into shape for use therein, but not entirely finished, and which were held parts of musical instruments because their shape and condition indicated *per se* their ultimate use. They are rather like certain cylindrical forms of wood or ivory involved in that case, the condition of which did not indicate that they were intended to be used as parts of musical instruments or that they were unfitted for use for other purposes and which were held not to be dutiable under the paragraph as parts of musical instruments. See also Richard *v.* United States (4 Ct. Cust. Appls., 470; T. D. 33883).

As to the second class of the merchandise it appears from the testimony above recited, which is substantially all that is relevant to the question, that the evidence is conflicting as to whether this class is or is not, in the condition imported, ready for use upon stringed instruments. There is, however, no dispute that these strings are used, when a part of the instruments, for the purpose of producing musical sounds. The importer claims they are free of duty as catgut unmanufactured under paragraph 529 of the act of 1909.

In Richard *v.* United States (3 Ct. Cust. Appls., 306; T. D. 32587) a like claim was made as to somewhat similar merchandise. The various statutes relating to catgut were reviewed in that case, and the conclusion reached that catgut strings for musical instruments imported in a condition fit for immediate use thereon were not entitled to free entry.

In the case now before us the board has found that in the condition as imported these strings are strings for musical instruments and can

be used as such.    We think the evidence in the record in connection
with the exhibits warrants the finding and that the claim for free
entry ought to be denied.

The result is that as to the catgut strings involved in protest
636379 the judgment of the Board of General Appraisers is *affirmed,*
while as to that covered by protest 619667 its judgment is *reversed,*
and it is held that the merchandise covered thereby is dutiable as a
manufacture of catgut at 25 per cent ad valorem under paragraph
462, as claimed by the importer.

*Modified.*