(C. D. 1049)

K. Engelsted *v.* United States

United States Customs Court, Second Division

(Decided March 26, 1947)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before Tilson, Kincheloe, and Lawrence, Judges

Lawrence, Judge: The question which confronts us here is whether certain so-called steel rings upon which duty was levied at the rate of 45 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930 for—

Articles or wares not specially provided for, * * * composed wholly or in chief value of iron, steel, * * * or other metal * * *

are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 353 of said act, as modified by the provisions in the trade

agreement between the United States and the United Kingdom, effective January 1, 1939 (74 Treas. Dec. 253, T. D. 49753), one of which reads:

Parts, not specially provided for, finished or unfinished, wholly or in chief value of metal, of any articles provided for in any item numbered 353 in this schedule, shall be dutiable at the same rate of duty as the articles of which they are parts.

The "articles" of which the imported steel rings are claimed to be parts are described under number 353 in said trade agreement as follows:

Machines having as an essential feature an electrical element or device and which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device * * * all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule.

The claimed rate is a reduction from the rate of 35 per centum ad valorem imposed by statute.

Other claims alleged in the protest were formally abandoned by plaintiff. The sole issue, therefore, is whether the above-quoted provisions in paragraph 353 more specifically describe the imported articles than does the one quoted from paragraph 397.

There has been offered in evidence as exhibit 1 a sample conceded to be representative of the imported merchandise. This exhibit consists of a steel ring measuring about 8 inches inside diameter, approximately 14 inches outside diameter, and one-fourth of 1 inch in thickness.

The only witness who appeared herein was called by the plaintiff. He testified that since 1911, when he received his degree as mechanical engineer, he has been continuously employed by concerns engaged in the business of manufacturing, exporting, and importing machine tools, Diesel engines, and tool steel; that during four of those years he acted as consulting engineer for the United States Government in connection with the building of machine tool plants; and that since 1925, he has been importing merchandise similar to exhibit 1 and made to his order.

He further testified that from 1925 to 1939 he made annual visits to the factory in Sweden where said merchandise was produced and observed the processes employed in manufacturing it. In describing such methods, he stated that a piece of steel was cut from a billet and a hole punched therein, after which it was forged by means of a steam hammer into the shape of exhibit 1; that it was thereafter annealed by heating to 1450 degrees Fahrenheit, and then subjected to a cooling process for about 8 hours; and that the purpose of the annealing was to make possible the machining of the ring. He explained that the carbon content of the steel in exhibit 1 (1.35 per

centum) was so high that it made the steel harder than any tool which may be employed upon it, thus making it necessary that the steel be softened by annealing for machining purposes, and that exhibit 1, before it was annealed, was very brittle and liable to crack or break if dropped upon a hard surface. The witness had never seen a forging composed of steel of such high carbon content which was not annealed before it was shipped.

He stated that exhibit 1 was designed solely and exclusively to be finished into a circular knife, and for that purpose was subjected, after importation, to various processes including machining, hardening, and grinding to a knife edge. It was then incorporated into a "Globe slicing machine" as the slicing tool thereof. There was received in evidence herein as illustrative exhibit A, a booklet containing a pictorial representation of a Globe slicing machine with printed matter descriptive thereof.

The witness further testified that said machines are employed in butcher shops and delicatessen stores to slice meat and vegetables; and that they are operated by an electric motor incorporated therein and could not be otherwise motivated without necessitating the designing of a new machine.

It is the plaintiff's contention that the imported articles are unfinished parts of Globe slicing machines and as such properly classifiable at the rate of 27½ per centum ad valorem under the above-quoted provision in the trade agreement with the United Kingdom relating to "parts." We believe such claim to be well-founded.

The uncontradicted evidence establishes that these rings are in fact unfinished knives, requiring only to be sharpened and otherwise finished to make them ready for immediate use as finished knives; and when so processed, they form integral and constituent parts of Globe slicing machines without which the latter would be incomplete and incapable of performing the sole function for which they were constructed and designed.

In *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873, referring to certain articles claimed to be unfinished parts of musical instruments, our appellate court stated:

The Supreme Court in the last-mentioned case [Magone v. Wiederer (159 U. S., 555)] seems to have adopted the generally accepted rule that chief use in such cases may be shown either by the character of the article itself, as imported, wherein it is evidenced that it is intended and susceptible to but a single use, declared by the statute, or that it may be shown by proof that it is intended and serviceable substantially for the purpose alone declared by the statute within the terms of which it is claimed to be dutiable. That is to say, that it may be brought within the terms of the statute either by evidence manifested by the articles *per se* or given at the trial. That is the accepted doctrine and the one which has received the approval of this court. Richard & Co. v. United States (3 Ct. Cust. Appls., 306; T. D. 32587); United States v. Lyon & Healy (4 Ct.

Cust. Appls., 84; T. D. 33366); Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528).

Inasmuch as the provision invoked herein provides for unfinished as well as finished parts of certain machines, we believe the articles in controversy, when finished, respond to the definition of what constitutes a "part," as judicially enunciated in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851. In that case the court said:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article. Welte & Sons* v. *United States,* 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.,* 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States,* 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker,* 16 Ct. Cust. Appls. 548, T. D. 43266. [Italics quoted.]

See also *Redden & Martin* v. *United States*, 5 Ct. Cust. Appls. 485, T. D. 35147, and cases cited therein.

We are satisfied that the record conclusively establishes that these unfinished knives, when completed and installed in slicing machines, constitute integral parts thereof and are the tools which function in the machines to slice meat or vegetables.

Upon this point it might be noted that the defendant, in a letter addressed to the court subsequent to the submission of the case, stated that "it would appear that the importer's claim under paragraph 353. Tariff Act of 1930, as modified by T. D. 49753 (Trade Agreement with the United Kingdom) is proper," and accordingly that it would not file a brief herein. However, another phase of the case requires our serious consideration.

Having reached the conclusion that the imported articles are, in fact, unfinished parts of Globe slicing machines, it becomes necessary to determine whether such mechanisms are "Machines having as an essential feature an electrical element or device and which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device," as provided in paragraph 353, as modified by the trade agreement with the United Kingdom, *supra.*

The above-quoted language from paragraph 353, as so modified, would appear to be clear and free from ambiguity. However, it is believed that its meaning will be shown with greater clarity if we first analyze closely related clauses in paragraph 353, as unmodified, and as interpreted in leading court decisions on the subject.

As unmodified, paragraph 353 of said act, read:

All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; and

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

With regard to the third and fourth divisions of said paragraph, this court and our appellate court were frequently called upon to adjudicate issues arising thereunder. Of particular interest are the cases of *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050, and *Ralph C. Coxhead Corp.* v. *United States*, id. 96, T. D. 47080, decided concurrently.

In the *Dryden* case, *supra*, the applicability of the third division of paragraph 353, *supra*, to an importation consisting of a knocked-down machine for cutting sponge rubber cake was in question, the importer claiming the importation to be dutiable as "all other machines, finished or unfinished, not specially provided for," under paragraph 372 of said act. In that case our appellate court stated:

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? *The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all.* Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph? [Italics supplied.]

In the *Coxhead* case, *supra*, likewise involving the third division of paragraph 353, *supra*, our appellate court after reviewing the legislative history of said provision, stated:

From a consideration of all the foregoing, it seems obvious that Congress, by its enactment of paragraph 353 intended to take from the said machine paragraph certain articles which would otherwise have been dutiable there, and also intended to gather into paragraph 353 articles which might otherwise find classification in paragraph 397 and elsewhere in the act. It is, also, clear to us that Congress was solicitous that electrical articles of certain kinds (some of which were definitely named) should be assessed with a higher rate of duty than was provided for in the machine provision quoted.

In view of the legislative history and the context of paragraph 353, we are of the opinion that any article which has as an essential feature an electrical element or device constituting the article, an electrical article is dutiable, as an entirety, under the third provision of paragraph 353, and we find no warrant for the conclusion that Congress intended that the motor in such an article should be made separately dutiable from the remainder of the article.

* * * We cannot read out of the provision the term "having as an essential feature" and we must give it some effect. *We think Congress, by that term, meant that the motor or the electrical feature of the article must be essential to the operation of the article and that if the article was so designed and constructed that it could*

*normally operate in two ways, both by electrical power and by hand power, interchangeably, it would not be an electrical article and the electrical element or device would not be an essential element or device.* \* \* \* [Italics supplied, except last four words which are quoted.]

Subsequently our appellate court had before it the case of *Julius Forstmann & Co.* v. *United States,* 28 C. C. P. A. (Customs) 222, C. A. D. 149, in which the applicability of said provision in paragraph 353, *supra,* was in issue. The court there stated: .

Congressional intent is to be gathered from the words used by the Congress, as contained in the laws, and also, among other things, by an examination, when necessary, of the legislative history connected with their enactment. In the instant case both parties urge that the legislative history of paragraph 353, *supra,* sustains their opposing contentions. This court has had occasion to review the legislative history of this paragraph, which first appeared in the Tariff Act of 1930. *United States* v. *R. W. Cramer & Co., Inc., supra; United States* v. *Dryden Rubber Co., supra; Ralph C. Coxhead Corp.* v. *United States, supra.* A further examination does not disclose to us that the said legislative history shows anything contrary to the legislative intent to be gathered from the language used in the paragraph and as interpreted by this court.

By virtue of the trade agreement with the United Kingdom, *supra,* the third and fourth divisions of paragraph 353 have been made more specific. In addition to articles *eo nomine* provided for therein, there are provisions for—

Machines having as an essential feature an electrical element or device and which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device \* \* \* all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule.

and—

Parts, not specially provided for, finished or unfinished, wholly or in chief value of metal, of any articles provided for in any item numbered 353 in this schedule, shall be dutiable at the same rate of duty as the articles of which they are parts.

Analyzing the above-quoted provisions, the meaning of the words therein "having as an essential feature an electrical element or device," as interpreted in the *Dryden* and *Coxhead* cases, *supra,* remains unchanged. As to the clause "which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device," it is to be noted that said paragraph 372, in addition to the variety of machines, machinery, machine tools, and so forth, *eo nomine* provided for therein, contains a provision imposing a duty of 27½ per centum ad valorem on "all other machines, finished or unfinished, not specially provided for." The machines contemplated by the latter general provision are necessarily nonelectrical in construction or those in which the electrical

element or device is not essential to the operation of the machine in that they may be interchangeably motivated by electricity or other power without any substantial alteration in the internal mechanism. Apparently it was this provision that the trade negotiators had in mind in reducing from 35 to 27½ per centum ad valorem the statutory rate imposed by said paragraph 353. To accomplish this purpose they were careful to use the words "which could be designed" thereby limiting the kind of electrical machines subjected to the reduced rate to those which were of a kind susceptible of being designed to operate without an essential electrical element or device. Reference to lexicographic authorities discloses the following definitions of the word "design"—

*design.* 1. To invent, devise, or formulate mentally the idea and essential features of; plan or map out in the mind; project; as to *design,* a building or a campaign. [Funk & Wagnalls New Standard Dictionary of English Language, 1942.]

*design* * * * 1. To draw the outline or figure of, especially of a proposed work of art; trace out; sketch, as a pattern or model. * * * Hence—2. To plan or outline in general; determine upon and mark out the principal features or parts of, as a projected thing or act; plan; devise. * * * [Century Dictionary, Vol. II 1889.]

The meaning of that portion of the provision here under consideration, reading "if of a kind which could be designed to operate without such electrical element or device," would therefore appear to be self-explanatory.

Hence, two questions arise when it is sought to apply the provisions of paragraph 353, as modified, *supra,* to an importation. First, is the imported machine essentially electrical, the electrical feature being so essential that without it the machine will not function normally, for the purposes intended? Second, if it is such an electrical machine, could a machine be invented or "designed" to perform the same function without the essential electrical feature and would such machine be one which is not elsewhere specifically provided for and therefore within the purview of paragraph 372?

If the answers to these questions are in the affirmative, the finished or unfinished parts of such a machine, if not specially provided for elsewhere in the tariff act, would be properly classifiable under the above-quoted provision for "parts" in paragraph 353, as modified.

It is our opinion, therefore, that the language of paragraph 353, as modified by the trade agreement, *supra,* reading, "Machines * * * if of a kind which could be designed to operate without such electrical element or device" would make the test of classification thereunder the modes of operation to achieve a particular result in each case. Of course, if the Globe slicing machine, to which reference has been made herein, could by minor alteration be made to operate by other than electrical power, it would not be within the purview of paragraph

353, as interpreted in the *Dryden* and *Coxhead* cases, *supra*, and necessarily not covered by the provisions of paragraph 353, as modified.

Applying the rules above set forth to the unfinished knives for Globe slicing machines here before us, the function of the machines is the slicing of meat and vegetables, and the sole motivating power is an electric motor incorporated therein. Such machines are, therefore, essentially electrical. To the inquiry, could a machine be invented or "designed" to perform the same function without an electric motor, we believe the evidence herein requires an affirmative answer.

As also representative of this "kind" of machine, reference is made to the case of *Gallagher & Ascher* v. *United States*, 3 Ct. Cust. Appls. 520, T. D. 33168, wherein our appellate court, describing the merchandise there before it, quoted from the decision of the lower court as follows:

The articles here are machines for slicing meats. This slicing arrangement is a machine knife, as opposed to a hand knife, and in it the meat is cut by a disk-shaped revolving knife, either hand operated or fitted so as to be power driven.

There are numerous other machines which could be encompassed by the provisions of paragraph 353, as modified by the trade agreement, *supra*. For example, it is well-known that sewing machines may be operated either by hand or foot power or by electric motor. (*Singer Manufacturing Co.* v. *United States*, Reap. Circ. 35122.)

But there are also machines which cannot, we believe, be designed to be operated without an electrical element or device as, for example, a radio receiving set. The latter is unquestionably a machine, and was so held in *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T. D. 43075. In that case, the court said:

We entirely agree with the construction of the court below in the case cited. In our opinion, a radio receiving set fully answers to the definition of a machine given in *Simon, Buhler & Baumann* v. *United States*, *supra*. A radio receiving set, having conducted to it the tenuous impacts of electrical energy, receives and manipulates them and in a most marvelous way converts them into a reproduction of sound. If this is not a machine it would be hard to conceive what would constitute one.

In the same category may be mentioned, *inter alia*, such mechanical contrivances as telephones, therapeutic and diagnostic devices, and like mechanisms.

We accordingly find from the record:

1. That the imported articles are unfinished parts of Globe slicing machines which are operated exclusively by the electric motors incorporated therein.

2. That said machines are of a kind which could be designed to operate without an electric motor.

We therefore conclude as matter of law that the imported articles herein are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by the provision in the trade agreement with the United Kingdom, *supra*, for parts, not specially provided for, finished or unfinished, of machines having as an essential feature an electrical element or device, but of a kind which could be designed to operate without such electrical element or device. That claim of the plaintiff is therefore sustained; all others are overruled.

Judgment will be entered accordingly.