(C. D. 2018)

KEER, MAURER COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 15, 1958)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise involved in these cases, consolidated at the trial, is described on the invoices as "rouleaux saphir" and was assessed with duty by the collector at 30 per centum ad valorem under paragraph 214 of the Tariff Act of 1930 as mineral substances, synthetic materials of gem stone quality, such as corundum and spinel, and articles or wares composed wholly or in chief value of such materials, not decorated in any manner. Plaintiff does not deny the fact that the articles are manufactures of earthy or mineral substances, not decorated, but claims that they are more specifically provided for in paragraph 367 (d) as jewels, suitable for use in any movement, mechanism, device, or instrument, dutiable under paragraph 367 or 368, or in any meter or compass.

The pertinent provisions of the tariff act are as follows:

PAR. 214. Earthy or mineral substances, wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

(The above paragraph was modified by the General Agreement on Tariffs and Trade, T. D. 51802, except as to "synthetic materials of

gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials.")

PAR. 367. (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

    *     *     *     *     *     *     *

(d) Jewels, suitable for use in any movement, mechanism, device, or instrument, dutiable under this paragraph or paragraph 368, or in any meter or compass, 10 per centum ad valorem.

    *     *     *     *     *     *     *

(i) For the purposes of this paragraph and paragraph 368 the term "jewel" includes substitutes for jewels.

PAR. 368. (a) Clocks, clock movements, including lever movements, clock-work mechanisms, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, synchronous and subsynchronous motors of less than one-fortieth of one horsepower valued at not more than $3 each, not including the value of gears or other attachment, and any mechanism, device, or instrument intended or suitable for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for recording or indicating time, or for recording, indicating, or performing any operation or function at a predetermined time, or times, all the above (except the articles enumerated or described in paragraph 367), whether or not in cases, containers, or housings:

The merchandise before the court was described by Frederick Steudler, partner of Vallorbs Jewel Co., manufacturer of jewel bearings and Swiss-type automatic screw machine parts, as cylindrical pieces of synthetic sapphire in various sizes. It was stipulated at the trial that the sizes involved herein are:

| Diameter | Length |
|----------|--------|
| .46 | x 1.746 millimeters |
| .76 | x 2.54 " |
| .76 | x 2.92 " |
| 1.76 | x 2.54 " |

The witness testified that he has been associated with the jewel-bearing business since 1926 and has bought, sold, and fabricated jewel bearings. He described a jewel bearing as a material made from sapphire which has extreme hardness, a very low percentage of friction, and very wear-resistant qualities. Each bearing has a particular design and shape for a particular requirement. It consists primarily of one part but, sometimes when close tolerance is required, a pivot and a bearing are fabricated as a unit and sold as a combination, an example being bearings for the guidance system of a satellite. Jewel bearings are of a particular type, such as cup jewel, link jewel bearing, and end stone. Many bearings that are imported

are processed in this country to adapt them for specific end uses. They are processed by polishing, sizing to a particular sized hole, and mounting into various holders. They may be "radiused" or angled. The finer the polishing, the more pressure the stone will take.

The witness testified that the chief use of the imported merchandise by his firm is the manufacture of a stylus, which includes a pointed cylindrical part with a radius on the very end. The stylus is used as a pivot in a V-type bearing in electrical measuring equipment and for the recording and replaying of sound. In order to prepare the merchandise for use, it is polished after importation and is processed as follows:

These parts are 18-thousandths of an inch in diameter, most of them. And the front part of that, or the one end, or sometimes both ends, are fabricated to the point that an angle is put on it, then the very tip of it radiused to a specific diameter.

The witness said the merchandise is also used as sapphire phonograph needles, as recording needles, and as a combination in which they do both the recording and the replaying of sound.

The witness mentioned other purposes for which the merchandise could be used as follows:

The type that I import can be used for, for instance to create an impulse, to give a certain motion to an item or to a mechanism. They can be used as an end stone, can be used as a roller bearing. They could be used as a sapphire phonograph needle, could be used as a recording needle. They might be used as a point for a profilometer to determine surface roughness.

Q. Do they have uses in any industry named in either of these paragraphs, 367 or 368?—A. Well, they mention time-measuring, time-indicating, and certainly parts such as we are discussing here could be used for an application in a small motor.

According to the witness, the merchandise, in its condition as imported, is suitable for use in mechanisms mentioned in paragraphs 367 and 368, because it has the characteristics of a jewel bearing. He said these items can be used and are used as a pivot in a jewel-bearing assembly in electrical measuring equipment. He added:

* * * They are used as an end stone to regulate the amount of end play of a bearing.

Q. That's another instrument in paragraph 367?—A. Yes. That could apply to any instrument. That covers the entire field of being a jewel bearing.

Q. And is that true of all of the items on all of the invoices before the court?— A. Yes, they have that suitability of being used in instruments of that type.

Judge Lawrence: You are speaking now, sir, of practical commercial utility, are you not?

The Witness: Yes; I am. I am not talking about my own application in every instance. I am talking of where these parts can be used and they are suitable for that use.

The witness did not know of any qualification which would make them unsuitable for a jewel-bearing use in the devices specified in paragraphs 367 and 368.

When asked how he was familiar with the use of this merchandise in the devices mentioned in paragraphs 367 and 368, he said that, during the war, his firm had made aviation instruments and that at one time it had specialized in making ball jewels and end-stone bearings for watches, spring-center jewels, and roller jewels. The same type material was used but not the same sizes. According to the witness, the type of jewel used in the fabrication of jewel bearings for aviation instruments was a ring bearing; it was primarily a circular jewel bearing with a hole that was olived in design. On the other hand, the particular items here under consideration are primarily adapted for use in making styluses.

In order to prevail, plaintiff must establish that jewels of the type and sizes before the court are suitable for use in a movement, mechanism, device, or instrument, dutiable under paragraph 367 or 368, *supra,* or in a meter or compass.

It has long been held that the words "suitable for use" mean actually, practically, and commercially fit for such use. *Kahlen* v. *United States,* 2 Ct. Cust. Appls. 206, T. D. 31947; *United States* v. *Lorsch & Co.,* 8 Ct. Cust. Appls. 109, T. D. 37222; *United States* v. *Amerman & Patterson et al.,* 9 Ct. Cust. Appls. 244, T. D. 38205; *United States* v. *Geo. S. Bush & Co., Inc.,* 26 C. C. P. A. (Customs) 145, C. A. D. 8. While the term does not require that the merchandise be chiefly used for the stated purpose, a mere possibility of such use is not sufficient; there must be a substantial actual use. *Wah Shang Company* v. *United States,* 44 C. C. P. A. (Customs) 155, C. A. D. 654.

In *United States* v. *Lorsch & Co., supra,* the court pointed out (p. 111):

"Actually," or "practically," or "commercially," or "commonly," fit for or used as, in no sense imply or require chief use. * * *

\*          \*          \*          \*          \*          \*          \*

Of course, these words do not imply every possibility of remotely ultimate use of crude materials. They imply a commercial suitability or fitness in the condition imported. Klipstein v. United States (1 Ct. Cust. Appls., 122; T. D. 31120). They exclude any mere incidental use from a controlling classification factor. Richard & Co. v. United States (3 Ct. Cust. Appls., 306; T. D. 32587). * * *

In *United States* v. *Amerman & Patterson et al., supra,* the court held that chalk which, after importation, had to be carefully bolted and treated before it became a trade article fit for medicinal or toilet use was not dutiable under a provision for chalk, suitable for medicinal or toilet purposes.

In the instant case, it appears that, after importation, this merchandise must be polished and "fabricated to the point that an angle

is put on it, then the very tip of it radiused to a specific diameter." There is no evidence that the merchandise is ever used in its condition as imported, without further polishing or processing.

While in *American Express Co. et al.* v. *United States*, 33 Treas. Dec. 326, T. D. 37395, it was held that jewel stock, which had to be cut, polished, and rounded after importation to fit it for use in the mechanism of a watch, was dutiable as jewels for use in the manufacture of watches, there was evidence that the merchandise could not be used for any other purpose and that such jewels, whether finished or unfinished, were classified by the trade as watch jewels. There is no comparable evidence in the instant case. See also *United States* v. *Elgin National Watch Co.*, 5 Ct. Cust. Appls. 336, T. D. 34532.

Furthermore, there is no evidence that jewels of the particular type involved herein are actually, practically, or commercially used in any of the devices mentioned in paragraphs 367 and 368, or in any meter or compass. According to the testimony, these jewels are used in the manufacture of styluses for electrical measuring equipment and for the recording and replaying of sound. There is nothing in the record from which we can determine whether or not the said electrical measuring equipment is dutiable under paragraph 368, and it is clear that instruments for recording or replaying sound would not be.

Plaintiff's witness has testified generally that the imported merchandise is suitable for use or "could" be used in the mechanisms mentioned in paragraphs 367 and 368, apparently on the ground that the items are jewel bearings and that jewel bearings could be used in any of the instruments mentioned. However, every jewel bearing is not classifiable under paragraph 367 (d), but only such as are suitable for use in the devices covered by paragraphs 367 and 368, or in a meter or compass. The witness said that the jewel bearings his firm used in manufacturing aviation instruments were ring bearings; that, in fabricating ball jewels and end-stone bearings for watches, spring-center, and roller jewels, the same material was used but not the same sizes; and that the imported items are adapted primarily for styluses.

On the entire record presented, we hold that plaintiff has not established that jewels of the type and sizes before the court are suitable in their imported condition for use in a movement, mechanism, device, or instrument, dutiable under paragraph 367 or 368 of the Tariff Act of 1930, or in a meter or compass. The protests are overruled and judgment will be rendered for the defendant.