## In re BLUMENTHAL et al.

### (Circuit Court, S. D. New York. June 20, 1892.)

CUSTOMS LAWS—TARIFF ACT OF OCTOBER 1, 1890.

Small, highly polished disks of pearl, which are plain on the back, with grooved rings or hollowed out in front, with rounded edges, and with small cavities in their centers, and which, except that they are not pierced with holes or shanked through their centers, exactly correspond in appearance with the ordinary superfine pearl buttons of commerce, are not dutiable as pearl buttons, under the provision for such buttons contained in paragraph 429 of the tariff act of October 1, 1890, (26 St. p. 567,) but are dutiable as manufactures of mother of pearl, under the provision for such manufactures contained in paragraph 462 of the same tariff act.

At Law. Appeal by importers from decision of the board of United States general appraisers. Reversed.

On March 18, 1891, the firm of B. Blumenthal & Co. imported by the Eider from a foreign country into the United States, at the port of New York, certain articles consisting of small, highly polished disks of mother of pearl, which were plain on the back, with grooved rings or hollowed out in front, with rounded edges, and with small cavities in their centers; and which, except that they were not pierced with holes or shanked through their centers, exactly corresponded in appearance with the ordinary superfine pearl buttons of commerce. These articles were returned by the local appraiser as pearl buttons, together with a report that they were buttons in a completed state, except the drilling of holes; that they were clearly defined in their character and use, notwithstanding the absence of this one element (drilling the holes) of completion; and that this element was omitted for the purpose and with the intention of evading the payment of the correct rate of duty. The collector of customs at this port classified them for duty as pearl buttons, under the provision for "pearl and shell buttons," contained in paragraph 429 of the tariff act of October 1, 1890, (26 U. S. St. p. 567,) and exacted duty thereon "at the rate of two and one half (2½) cents per line, button measure, of one fortieth (1-40) of one (1) inch per gross, and in addition thereto twenty-five (25) per centum *ad valorem.*" Against this classification and this exaction the importers duly protested, claiming that these articles were dutiable at

the rate of 40 per centum *ad valorem*, as manufactures of pearl, under the provision for "manufactures of ivory, vegetable ivory, mother of pearl, and shell, or of which these substances, or either of them, is the component material of chief value, not specially provided for in this act," contained in paragraph 462 of the same tariff act. Thereafter, pursuant to section 14 of the customs administrative act of June 10, 1890, (26 U. S. St. p. 131,) the collector transmitted the invoice of these articles, and all the papers and exhibits connected therewith, to a board of three United States general appraisers to examine, and decide the case thus submitted. The board of United States general appraisers, upon the evidence produced before them, found, among other things, in addition to the facts hereinbefore stated, that the collector, at the time of making the aforesaid transmission, expressed the opinion that it was a constrained construction of the law to classify these article as buttons, but that he had made such classification and exaction, as aforesaid, in order to have the matter submitted to the board for an authoritative decision; that these articles were small masses of mother of pearl or shell, which had reached such a stage of manufacture that they were unsuitable for use except as buttons; that they were neither shanked nor pierced, but technically, and among manufacturers, they were known as "buttons;" that regarding the claim made before the board by the importers, that these articles were button blanks and dutiable as manufactures of mother of pearl, articles known as "pearl button blanks" were rough disks, as they were sawed out from the shell; and that, admitting that the question involved was one of doubt, the doubt was insufficient to justify a reversal of the decision of the collector. The board of United States general appraisers accordingly affirmed the collector's classification and exaction. The importers thereupon, under section 15 of the aforesaid customs administrative act, applied to the United States circuit court for this district for a review of the questions of law and fact involved in the board's decision. After the board had made its return pursuant to an order granted upon this application, further evidence was taken under an order of the circuit court obtained for that purpose. This further evidence, among other things, showed that the relative cost in this country of piercing articles like those in suit with holes, so that they would exactly correspond in appearance with the ordinary superfine pearl button of commerce, was about one twentieth of the cost of the articles themselves.

*Albert Comstock*, for importers.

*Edward Mitchell*, U. S. Atty., and *Thomas Greenwood*, Asst. U. S. Atty., for collector.

LACOMBE, Circuit Judge. The collector, although he classified these articles as buttons, seems to have done so only in order to make up a case for submission to the board of appraisers, himself expressing the opinion that it is a "strained construction of the law" so to classify them; and the board of appraisers expressly state that, in their opinion, the question is one of some doubt, and that the doubt is insufficient to justify a reversal of the decision of the collector of the port; and for that reason

they affirm his action. The board find that the articles are "small, round masses of mother of pearl or shell, which have reached such a stage of·manufacture that they are unsuitable for use except as buttons." The evidence does not seem to warrant that conclusion, because there is distinct proof out of the mouths of witnesses whose character is unassailed, to the effect that these articles can be, and in fact are, used to a substantial extent for other purposes than for the completion of their transformation into buttons. The board also find that the articles are neither shanked nor pierced; but technically, and among manufacturers, are known as "buttons." Manifestly they are not shanked or pierced, and how they may be known technically among manufacturers is immaterial. The question to be determined here is whether they are "buttons," within the language of the tariff act,—language which is to be taken in its ordinary meaning unless it appears that trade and commerce have given some specific meaning to the words employed. Now, although they may stop short of being complete buttons by a very small measure, that circumstance is immaterial; and it is also wholly immaterial with what intent the process of their manufacture was stopped at that point. Much testimony seems to have been taken before the board of appraisers going to show that the articles were imported in this unfinished condition, in order that they might escape the tariff rate laid upon pearl buttons, and pay the lower rate imposed on manufactures of pearl or shell. In *Seeberger* v. *Farwell*, 139 U. S. 608, 11 Sup. Ct. Rep. 650, it was held that the question as to the intent of the importer was wholly immaterial, so long as congress provided that goods in a particular condition should pay a lower rate of duty than goods in another. It was and is the right of the importer, if he so chooses, to put his goods into such a condition for importation here as will enable him to get them in at the lower rate. There is no finding of the board of appraisers as to whether the word "buttons" or the words "pearl buttons" have a distinct commercial meaning in trade and commerce. According to the usages of common speech, these articles here are not completed buttons, because they lack the essential element of a device whereby they may be affixed to garments. Some evidence was given, and exhibits introduced, as to a method of pasting them upon cloth, but it was apparently an experimental use only. Manifestly it distorts the cloth, as it has in the case of the exhibits submitted; and upon this argument it became apparent, from actual experiment, that the presence of a little moisture so softened the cement that the "button" dropped off. Under these circumstances, such testimony can hardly be considered sufficient to establish the proposition that the articles imported here are now in condition to be fastened to garments for use as buttons; and that being so, it seems to me that they come short of the designation "buttons," as used in the trade, and in fact have not yet been sufficiently advanced in manufacture to become the "buttons" of every-day speech. For these reasons the decision of the board of appraisers is reversed, and the collector directed to classify the articles in suit as manufactures of mother of pearl, as claimed by the importers in their protest.