(C.D. 2518)

U.S. PLASTIC & CHEMICAL CORPORATION *v.* UNITED STATES (ORIENTAL EXPORTERS, INC., PARTY IN INTEREST)

United States Customs Court, Third Division

(Decided March 9, 1965)

*Heckman & Meehan* (*Charles M. Meehan* and *Jerome H. Heckman* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

*Lamb & Lerch* (*David A. Golden* and *Daniel I. Auster* of counsel) for the party in interest.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Plaintiff has sued, as an American manufacturer of buttons, for relief under section 516, Tariff Act of 1930, as amended, protesting the tariff classification of certain polyester discs, imported from Japan, as button blanks. It is plaintiff's claim that these discs are properly dutiable as buttons. The importer of the merchandise, Oriental Exporters, Inc., is the party in interest and has appeared with defendant in defense of the collector's classification of this merchandise as button blanks.

When plaintiff rested, defendant moved for nonsuit on the ground that plaintiff's proofs had not made a *prima facie* case. Decision on the motion was reserved, in view of the considerable volume of testimony that had been adduced and the necessity of resorting to the record in order to weigh the merits of the motion, in the light of such evidence. The basis for the motion, as stated by counsel for defendant, with which the party in interest associated itself, was as follows:

* * * that no prima facie case has been presented on the part of the plaintiff, either overcoming the presumption that the merchandise at bar is a button blank or establishing that the merchandise at bar is a button. On the contrary, all the testimony that has been produced by the plaintiff is consistent with the classification of the merchandise as a button blank, and is consistent with the proposition that such an item is not a button until such a point has been reached that there is a means of attachment of the item to the garment or item. [R. 170.]

On a motion made by defendant, after plaintiff has rested, to dismiss for failure of proof on plaintiff's part, the court, when sitting without a jury, has wide discretion. The Federal Rules of Civil Procedure, for instance, state the rule thus:

* * * After the plaintiff, *in an action tried by the court without a jury*, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *The court as trier of the facts* may then determine them and render judgment against the plaintiff or *may decline to render any judgment*

*until* the close of all the evidence. [Fed. Rules of Civil Procedure, rule 41(b), 28 U.S.C.; emphasis supplied.]

Plaintiff is to be given the benefit of every piece of evidence which tends to sustain his averments. Evidence favorable to defendant's case is to be excluded, for purposes of the motion. *Thompson-Connellsville Coke Co.* v. *McKeefrey Iron Co.*, 281 Fed. 312.

It is difficult to conclude, after reading the extensive briefs filed by defendant and the party in interest in support of this motion, why it was made. Much of the evidence cited in support of the motion is testimony that was elicited by defendant on cross-examination; and even such evidence is hardly persuasive that a nonsuit should be directed. Nonsuit is not proper in every case in which the plaintiff finally fails to prevail on the record as a whole.

We find that plaintiff's evidence suffices to bring the issues before us for decision on the entire record. That record, of course, includes several exhibits, including exhibits introduced by defendant and by the party in interest, as well as those jointly introduced and the exhibits introduced by plaintiff; also, testimony adduced by defendant and by the party in interest, as well as the testimony adduced by plaintiff. The motion to dismiss is denied. We proceed, then, to decision of the issue raised by the protest.

It would be difficult to find a record more peppered with objections, arguments, and motions, making difficult the synthesis of pertinent facts. The issue itself is fairly clear. Stripped of irrelevant verbiage in a record close to 300 pages, the facts emerge as follows:

Exhibits 1, 2, and 3 are representative of the imported merchandise, in the condition in which imported. Following processing in the United States, exhibits 1A, 2A, and 3A are illustrative, respectively, of the finished products produced from the imported merchandise. Exhibit 4 is a button blank manufactured, in the United States, by plaintiff. Collective exhibits 5, 5A, 5B, and 5C illustrate the steps of the method by which plaintiff manufactures blanks. It is designated as a stamped imitation pearl plastic sheet.

Collective exhibit 8, 8A, 8B, and 8C, specimens of merchandise referred to in correspondence and a pricelist (exhibits 6 and 7), are merchandise of Nihon Button Kogyo Co., Ltd., of Osaka, Japan. Exhibit 11 relates to merchandise of Kiyohara & Co., Ltd., of Osaka, Japan, referred to in correspondence and a pricelist (exhibits 9 and 10).

Plaintiff also introduced into evidence (exhibit 12) two groups of unfinished (group A) and finished (group B) natural pearl button blanks.

Defendant's exhibits consist of samples of a casein blank (exhibit A), a machined casein blank known as a disc (exhibit B), and two

tumbled and polished button blanks, without holes (exhibit C-1) and with holes (exhibit C-2).

The party in interest introduced four sets of samples that are marked exhibits I-A, I-B, I-C; II-A, II-B, II-C; III-A, III-B; and IV-A and IV-B. Their introduction was considerably confused, not as in the case of plaintiff's exhibits, by repetitious objections and arguments of opposing counsel, but as the result of the questioning of the introducing party's witness.

All three parties adduced the testimony of witnesses.

The competing tariff provisions are both found in paragraph 1510, Tariff Act of 1930. The provision under which the collector classified the merchandise is the modification effected by a trade agreement supplementary to the General Agreement on Tariffs and Trade, proclaimed by the President on December 28, 1962 (T.D. 55816), as follows:

Parts of buttons and button molds or blanks, finished or unfinished, not specially provided for_____ 36% ad val.

The provision under which plaintiff claims is the modification, effected by the General Agreement on Tariffs and Trade (T.D. 51802), as follows:

Buttons made in imitation of or similar to pearl or shell buttons (except buttons commonly known as Roman pearl and fancy buttons with a fish-scale or similar to fish-scale finish)_____ ¾¢ per line per gross and 12½% ad val.

The issue simmers down to this: Were the imported articles, in their condition as imported, so far advanced in manufacture for use as buttons that, although they were not then completely finished buttons, they either were dedicated to use as buttons and ought to be classified as buttons for tariff purposes, or were the articles commonly known as buttons.

The tariff theory of dedication is related to articles in which some processing remains to be done in order to make a finished article known to commerce as the article to which earlier dedication was achieved.

What are the facts? The imported articles (exhibits 1, 2, and 3) were cut, faced, turned, and polished polyester discs. Subsequent to importation, these discs were finished (exhibits 1A, 2A, and 3A) by the drilling of holes; and they were cleaned and sometimes polished, as necessary to remove whatever dust was consequent on the drilling operation.

There is a conflict of testimony as to the commercial designation of these articles. Plaintiff adduced testimony that they are commercially known as buttons. Defendant and the party in interest had witnesses who identified the articles as button blanks, and negated identification as buttons.

In that conflict, it is unnecessary for us to determine where the weight of evidence is, for there is a tariff classification which is even more exactly descriptive. These are not buttons made of polyester. They are parts of such buttons.

The distinction was made clear by our appeals court in *United States* v. *Hensel, Bruckmann & Lorbacher*, 8 Ct. Cust. Appls. 244, T.D. 37520, cited by defendant. The article in litigation there was described as being perforated for the reception of a metal shank, or wire loop, to make it into a shoe button. The claim was that, in condition as imported, it was a button.

In its opinion, the appeals court cited the "well-reasoned opinion by Waite, General Appraiser" in an earlier case (T.D. 35843), quoting with approval as follows:

> According to the testimony these goods were imported to be made into shoe buttons, but before they can be used as such it is necessary to attach a metal shank, which is done by putting the same through the perforation and fastening it upon one side. On the other end of the shank is a loop through which the thread or fastening is passed in placing it upon the shoe. It appears from the testimony that it is sometimes used as a "collar loop" and "trimming button."

> We do not think the article has been shown to be a completed button. It may very consistently be considered, we think, a part of a button, but whether a shoe button or some other button depends upon its use. We are of the opinion that it is a part of a button, and specifically mentioned under that part of paragraph 339 which provides for "parts of buttons and button molds or blanks, finished or unfinished."

> We are not unmindful of the fact that this, in a way, produced an inconsistency in the law in that it levies a higher rate of duty upon part of an article than the article pays when completed. The language of the statute, however, we conclude, is plain. There is no ambiguity, in our judgment; hence it is not necessary to invoke refined rules of construction. [*Redden* v. *Martin*, 29 Treas. Dec. 427.]

Similarly, here there is no need to invoke refined rules of construction. These imported articles have been processed beyond the condition of a finished button blank; but they have not yet been so processed as to be a completed button.

While it appears that the advisory recommendation of the examiner was for classification as button blanks, the collector reported to the court (form 10–16) that the merchandise was classified as button blanks or molds and parts of buttons, finished or unfinished. The variance is not material, as the rate is the same for blanks and for parts of buttons. In any event, plaintiff has not shown the article to be that for which the protest claims classification. In their condition as imported, these discs are parts of buttons, within the rule laid down in the *Hensel* case, *supra*.

We are not impressed that we ought to read into paragraph 1510 the language "finished or partly finished" which appears in paragraph 1509. It is urged that not to do so will result in inconsistency

between the two provisions. This problem, too, was encountered by Waite, General Appraiser, in T.D. 35843, and answered as follows:

* * * To give a different meaning to the plain language of the statute because it is imagined that an inconsistency might arise would be a usurpation of legislative functions of Congress and amount to judicial legislation. Such acts are scrupulously avoided by the courts.

It remains for us to mention the arguments advanced that these articles have been so far advanced toward their intended use as buttons, that they are dedicated to use as buttons and should be so classified.

The cited cases, in which the theory of dedication to use has been applied, involved competition between a general classification and a specific enumeration. Examples are: Manufactures of glass, or articles of table or household use (*William Adams, Inc.* v. *United States*, 51 Cust. Ct. 126, C.D. 2419); packing boxes, or manufactures of wood (*Norge Division, Borg-Warner Corp.* v. *United States*, 44 Cust. Ct. 121, C.D. 2164); and "pillar or bottom plates, or their equivalent," or articles or wares, not specially provided for, composed in chief value of copper (*Waltham Watch Co.* v. *United States; Jaeger Watch Co., Inc.*, Party in Interest, 25 CCPA 330, T.D. 49425). To like effect, plaintiff has cited a number of cases in its brief.

In such cases, the guiding principle is the relative specificity of the competing classifications. The test is: Does a specific tariff enumeration more accurately describe the imported article than does the general enumeration. Here, the competition is between equally specific enumerations, both of them provisions found in the same paragraph. There appears to be no basis for invoking the doctrine of relative specificity in this case, for no general enumeration is in issue. The question is, which of two specific enumerations more accurately describes these articles.

There is a decision which is almost directly in point. Plaintiff cites it. Recognizing that its holding is adverse to the protest claim, plaintiff attempts to distinguish it. We are not impressed that the argued distinction is sound. The case is *In re Blumenthal et al.*, 51 Fed. 76.

The merchandise there was described by the court (Circuit Court, Southern District of New York) as "certain articles consisting of small, highly polished disks of mother of pearl, which were plain on the back, with grooved rings or hollowed out in front, with rounded edges, and with small cavities in their centers; and which, except that they were not pierced with holes or shanked through their centers, exactly corresponded in appearance with the ordinary superfine pearl buttons of commerce." (*In re Blumenthal, supra*, at p. 76.)

The articles were classified as pearl buttons, on the ground that, at the time of importation, they were buttons in a completed state *except for the drilling of holes*, and that they were clearly defined in their

character and use, notwithstanding the absence of the one element for completion as buttons, namely, the drilling of holes.

The importer claimed classification as manufactures of pearl. (It appears there was then no tariff provision for parts of buttons, as there now is.)

It will be noted how similar are the facts in *Blumenthal* to the facts here. The differences are that the articles there were of pearl, and here of polyester; and that there was then no provision in the law for parts of buttons. The question decided, however, is identical, that the articles which, as imported, lacked holes or other means of attachment, were *not* buttons.

Although there was some evidence in *Blumenthal* that the pearl articles were known technically, and among manufacturers, as "buttons," the court said:

* * * Manifestly they are not shanked or pierced, and how they may be known technically among manufacturers is immaterial. The question to be determined here is whether they are "buttons," within the language of the tariff act,—language which is to be taken in its ordinary meaning unless it appears that trade and commerce have given some specific meaning to the words employed. Now, although they may stop short of being complete buttons by a very small measure, that circumstance is immaterial; and it is also wholly immaterial with what intent the process of their manufacture was stopped at that point. Much testimony seems to have been taken before the board of appraisers going to show that the articles were imported in this unfinished condition, in order that they might escape the tariff rate laid upon pearl buttons, and pay the lower rate imposed on manufactures of pearl or shell. In *Seeberger* v. *Farwell*, 139 U.S. 608, 11 Sup. Ct. Rep. 650, it was held that the question as to the intent of the importer was wholly immaterial, so long as congress provided that goods in a particular condition should pay a lower rate of duty than goods in another. It was and is the right of the importer, if he so chooses, to put his goods into such a condition for importation here as will enable him to get them in at the lower rate. There is no finding of the board of appraisers as to whether the word "buttons" or the words "pearl buttons" have a distinct commercial meaning in trade and commerce. According to the usages of common speech, these articles here are not completed buttons, because they lack the essential element of a device whereby they may be affixed to garments. [*Blumenthal, supra,* at p. 78.]

One further point remains for consideration. Here, as there was in *Blumenthal*, there is some testimony as to a method of affixing these articles to garments without either shanks or buttons. We find such evidence, as the court found in the *Blumenthal* case, insufficient to establish the proposition that these articles, as imported, are in the condition usual for attachment to garments as buttons. To the contrary, there is extensive testimony as to processing subsequent to importation, to prepare them for attachment by the drilling of holes.

On the record, these articles are shown to be parts of buttons. As in the *Blumenthal* case, *supra,* "they come short of the designation 'buttons,' as used in the trade" (p. 78). In fact, they are not the

"buttons" of common or everyday speech.

The protest is overruled. Judgment will be entered accordingly.